*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0316p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

BRANDON ROBINSON,

        *Petitioner-Appellant,*

    *v.*

CAROL R. HOWES, Warden; MICHIGAN
PAROLE BOARD,

        *Respondents-Appellees.*

No. 10-2696

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-15419—Denise Page Hood, District Judge.

Argued: September 20, 2011

Decided and Filed: December 19, 2011

Before: BATCHELDER, Chief Judge; McKEAGUE and STRANCH, Circuit

Judges.

_____

## COUNSEL

**ARGUED:** Martin J. Beres, Clinton Township, Michigan, for Appellant. Andrea Marion Christensen, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Martin J. Beres, Clinton Township, Michigan, for Appellant. Andrea Marion Christensen, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. Petitioner Brandon Gregory Robinson appeals the district court's denial of his petition for habeas corpus, in which he asserts a violation of his Sixth Amendment right to effective assistance of counsel. We **AFFIRM**.

1

## I. Background

This case arose from a 911 call placed on September 28, 2004, which reported shots fired from a yellow vehicle at 56 Elmhurst in Highland Park, Michigan. Based on this dispatch, police officers apprehended Petitioner and recovered a gun from his vehicle. Petitioner waived his right to a jury trial and proceeded to a bench trial in Wayne County Circuit Court. The parties stipulated that Petitioner was not eligible to carry a firearm on the day in question because he had previously been convicted of a felony and his rights had not yet been restored.

At trial, the defense presented no witnesses and argued that someone else had placed the gun in the vehicle and then set Petitioner up by falsely reporting a shooting. The prosecution offered Wayne County Deputy Sheriffs Michael Kasholo and Phillip Kozlowski, two officers involved in Petitioner's arrest, as trial witnesses.

Deputy Kasholo testified that he was dispatched to 56 Elmhurst Street in Highland Park on the afternoon of September 28, 2004 based on a radio run reporting "shots fired from a yellow vehicle." Upon arrival at the scene, he saw a bright yellow Chevy parked across from 56 Elmhurst. He approached the driver's side of the vehicle with his gun drawn, and when he was about 10 feet away, Petitioner saw him and exited the car, shouting that he had done nothing wrong. Kasholo instructed Petitioner to stay put and then noticed a handgun on the front seat of the car. Kasholo yelled to the other officers that there was a gun and attempted to close the gap between him and Petitioner. Petitioner began walking away from Kasholo, towards the rear of the car, and Deputy Kozlowski attempted to intercept him. Then, Deputy Kasholo testified, "it turned into a fleeing situation" and "a wrestling match ensued." After a struggle, during which one officer sprayed Petitioner with pepper spray, Deputy Kozlowski and Officer Dan Carmona subdued Petitioner and placed him under arrest. On cross examination, Deputy Kasholo stated that after Petitioner was secured and the weapon recovered, he spoke with some pedestrians who told him no shots had been fired in the area.

Deputy Kozlowski testified that when he arrived at the scene, he saw Deputy Kasholo approaching the vehicle. Kozlowski positioned himself behind Deputy

Kasholo, at which time Petitioner was still seated in the car. Kasholo told Petitioner to stay in the car, but Petitioner exited the vehicle and kept saying that he did not do anything wrong. Kozlowski then tried to grab Petitioner by the back of the collar and told Petitioner to turn around and put his hands on the car. Petitioner swung around, trying to break loose from Kozlowski's hold, and attempted to run towards the street. At the same time, Deputy Kasholo yelled, "Gun." Kozlowski and his partner Officer Carmona struggled with Petitioner for 3-5 minutes, sprayed Petitioner with pepper spray, and eventually secured him. On cross examination, Deputy Kozlowski testified that he and Deputy Kasholo had their guns drawn when approaching Petitioner's vehicle. He claimed that there were no pedestrians when they approached Petitioner's vehicle but that he heard the voices of bystanders during the scuffle.

The court, crediting the testimony of the two police officers, found Petitioner guilty of being a felon in possession of a firearm, resisting a police officer, and possession of a firearm during the commission of a felony.

On direct appeal, Petitioner argued that his arrest violated his Fourth Amendment rights because it was based on uncorroborated information from an anonymous caller and that his trial counsel was constitutionally ineffective for failing to file a motion to suppress the gun. The Michigan Court of Appeals, noting that the circumstances of the 911 call were not in the record, denied Petitioner's Fourth Amendment claim, finding that the investigatory stop and subsequent arrest were justified, and denied Petitioner's ineffective assistance claim on the basis of the unmeritorious Fourth Amendment claim. *People v. Johnson*, No. 268413, 2007 WL 1374836 (Mich. Ct. App. May 10, 2007) (unpublished per curiam opinion).[1] The Michigan Supreme Court denied leave to appeal. *People v. Johnson*, 737 N.W.2d 697 (Mich. 2007).

Petitioner filed a habeas petition in the United States District Court for the Eastern District of Michigan, alleging the same Fourth Amendment and ineffective assistance of counsel claims as on direct appeal. The district court properly dismissed

---

[1]Petitioner is also known as Brandon Gregory Johnson.

Petitioner's Fourth Amendment claim as barred under *Stone v. Powell*, 428 U.S. 465, 482 (1976). After an evidentiary hearing on his ineffective assistance of counsel claim, the district court denied the petition but granted a certificate of appealability. *Robinson v. Howes*, No. 07-15419, 2010 WL 4942839 (E.D. Mich. Nov. 30, 2010).

## II. Application of AEDPA

Before reaching the merits of his petition, we address the threshold question of the proper standard of review—specifically, whether AEDPA deference or *de novo* review applies. AEDPA's deferential standard of review applies to a state prisoner's habeas claims that were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Claims that were not "adjudicated on the merits in State court proceedings" receive the pre-AEDPA standard of review: *de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact. *Brown v. Smith*, 551 F.3d 424, 428, 430 (6th Cir. 2008).

This threshold inquiry has become more significant in light of the Supreme Court's recent decision in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). Under *Pinholster*, review under § 2254(d)(1) is not only deferential but also limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398. In other words, a federal habeas court may not rely on evidence introduced for the first time in that court and reviewed by that court in the first instance to determine that a state court decision was "contrary to" to or an "unreasonable application of" clearly established federal law. *Id*. at 1399. However, if the claim was never "adjudicated on the merits" in state court, the claim does not fall under 28 U.S.C. § 2254(d) and *Pinholster* does not apply. In such cases, a federal habeas court may order an evidentiary hearing, provided the threshold standards for admitting new evidence in federal district court are met, *see* 28 U.S.C. § 2254(e)(2), and decide the habeas petition under pre-AEDPA standards of review. *See Pinholster*, 131 S. Ct. at 1401 ("Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief . . . . [N]ot all federal habeas claims by state prisoners fall within the scope of § 2254(d), which applies only to claims 'adjudicated on the merits in State court proceedings.'").

Petitioner argues that his ineffective assistance claim was never adjudicated on the merits because the state appellate court did not have before it a complete record. His contention is based on the fact that the state record did not include the circumstances of the 911 call that initiated Petitioner's encounter with the police or trial counsel's reasons for failing to file a motion to suppress, evidence that would be necessary to determine whether trial counsel's performance was constitutionally defective. The State summarily concludes that the ineffective assistance claim was fully adjudicated on the merits in state court, citing to only the state court decision.

Because we find that Petitioner fails to make a showing of ineffective assistance of counsel even under the pre-AEDPA standard, we assume without deciding that his ineffective assistance claim was never "adjudicated on the merits in State court proceedings" and apply the pre-AEDPA standard of review.[2]

### III.  Evidentiary Hearing

A district court's decision to grant an evidentiary hearing is reviewed for abuse of discretion. *Couch v. Booker*, 632 F.3d 241, 244 (6th Cir. 2011). Under 28 U.S.C. § 2254(e)(2), if an applicant for habeas relief "has failed to develop the factual basis of a claim in State court proceedings," a district court may not grant an evidentiary hearing on the claim unless the applicant shows that:

> (A) the claim relies on–
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no

---

[2]We note, however, that this situation is similar to that in *Brown*, where this Court found that petitioner's ineffective assistance claim was not fully adjudicated on the merits because the state appellate court did not have before it key records that were the basis of the claim. *Brown*, 551 F.3d at 428. There, the state appellate court acknowledged that its review was "limited to mistakes apparent on the record." *Id*. at 429. Here, the state court made no such admission but noted that the record did not include the circumstances of the 911 call and began its analysis at the point when the police were dispatched. *Johnson*, 2007 WL 1374836, at *1-2.

reasonable factfinder would have found the applicant guilty of the underlying offense."

28 U.S.C. § 2254(e)(2)(A)-(B).  The strictures of § 2254(e)(2)(A)-(B) do not apply, however, where an applicant has not failed to develop—i.e., has been diligent in developing—the factual basis of his claim in state court.  *See Williams v. Taylor*, 529 U.S. 420, 432 (2000) ("[F]ailure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.").  "Diligence for purposes of § 2254(e)(2) depends upon 'whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in the state court.'" *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004) (quoting *Williams*, 529 U.S. at 435).  Where an applicant has been diligent, the decision to grant an evidentiary hearing is left to the district court's sound discretion.  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (noting that AEDPA did not change the "basic rule" that the decision to grant an evidentiary hearing is left to the discretion of the district courts, though AEDPA deference should guide the decision).

In granting an evidentiary hearing, the district court made no explicit finding that Petitioner diligently sought to develop the factual record on his ineffective assistance claim.  The State did not dispute Petitioner's request for a hearing in the district court and has not contended on appeal that the district court's grant was improper, claiming only that in light of *Pinholster*, any new evidence elicited at the evidentiary hearing may not support a grant of habeas relief.  As we are proceeding under the assumption that § 2254(d)—and thus *Pinholster*—does not apply, we may properly consider the evidence as long as the district court did not abuse its discretion in granting a hearing.

The record shows that Petitioner requested an evidentiary hearing on his ineffective assistance claim (called a *Ginther* hearing in Michigan, pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973)), in a footnote in his brief submitted to the Michigan Court of Appeals.  While this may not have been a proper method of requesting an evidentiary hearing, Petitioner later submitted to the Court of Appeals a

*pro se* motion for a *Ginther* hearing. The Michigan Court of Appeals summarily denied Petitioner's motion to submit a *pro se* motion to remand. In its opinion, the court stated that there was "no need to develop the record" regarding the circumstances of the 911 call because Petitioner had not raised the claim at trial, even though Petitioner's ineffective assistance of counsel claim was premised on the fact that his trial counsel did not raise the issue below. *See Johnson*, 2007 WL 1374836, at *2. In his application for leave to appeal to the Michigan Supreme Court, Petitioner again raised his ineffective assistance claim and the need for a hearing. On this record, we find no abuse of discretion in the district court's grant of an evidentiary hearing. Accordingly, we consider the elicited evidence.

## IV.  Ineffective Assistance of Counsel

## A.  Standard of Review and Applicable Law

Under pre-AEDPA standards, a state court's legal conclusions are reviewed *de novo*. And although we operate under the assumption that AEDPA deference to a state court's legal rulings under § 2254(d) does not apply, a state court's factual determinations are still presumed correct under § 2254(e)(1), to be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Brown*, 551 F.3d at 431. A district court's legal conclusions in a habeas proceeding are also reviewed *de novo* and its factual findings for clear error. *Awkal v. Mitchell*, 613 F.3d 629, 638 (6th Cir. 2010) (en banc). However, where a district court's factual findings are based on a review of state court trial transcripts, and the district court made "no credibility determination or other apparent finding of fact," those findings are reviewed *de novo*. *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000) (quoting *Moore v. Carlton*, 74 F.3d 689, 691 (6th Cir. 1996)).

To establish an ineffective assistance of counsel claim, Petitioner must first demonstrate that counsel's performance was deficient, meaning that she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether

counsel's performance was deficient is judged by an objective standard of reasonableness, and "there is a strong presumption in favor of finding that counsel's performance 'falls within the wide range of reasonable professional assistance.'" *White v. Mitchell*, 431 F.3d 517, 528 (6th Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). Second, the Petitioner must show he was prejudiced by counsel's deficient performance, meaning that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When claiming that counsel was ineffective for failing to file a suppression motion, Petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

## B. Fourth Amendment Claim

### 1. Factual Record

The district court held an evidentiary hearing on May 11, 2010, at which Petitioner, Petitioner's sister, and Petitioner's trial counsel testified. Petitioner stated that on the day in question, he, his uncle Paul, and his friend Lavelle were smoking marijuana in Petitioner's car while parked in front of 54 Elmhurst in Highland Park. When they finished, Lavelle pulled a gun from his waistband and told Petitioner to put the gun under the front passenger seat and hold it for him. Lavelle said he and Paul were going into the house for a moment and would be right back. Five to seven minutes later, Petitioner noticed several police cars entering the block. He heard police say that they got a call that shots were fired from a yellow car on that block. The police spoke with bystanders who told them no shots had been fired. The police then surrounded Petitioner's car with guns drawn and ordered him to get out. As Petitioner exited the car, an officer grabbed him and tried to cuff him. Petitioner resisted the arrest because he did not think he had done anything wrong and he did not know anything about a shooting. Police found the gun after they secured Petitioner.

Petitioner claimed that the police lied at trial when they testified that (1) he had jumped out of the vehicle yelling that he had not done anything wrong, (2) the gun was in plain view on the front seat, and (3) bystanders told them after, not before, the encounter with Petitioner that there had been no shooting. Petitioner testified that he told his trial counsel this version of events and asked her to obtain an audio recording of the 911 call and a videotape of the arrest from cameras mounted on Wayne County sheriff cars and to subpoena the bystanders who told police there had been no shooting. On cross examination, Petitioner admitted that he stated the gun was his three times at his sentencing hearing. He explained that his trial counsel had encouraged him to do so to get a favorable plea bargain in a separate case.

Stacy Robinson, Petitioner's sister, testified that on the day in question, she was sitting out on the porch with her grandmother three or four lots away from where Petitioner's car was parked. She saw police officers jump out of their cars with their guns drawn and ask bystanders about a shooting. Bystanders told the police there had been no shooting. After Ms. Robinson took her grandmother back into the house, she came outside again and observed police pointing their guns at Petitioner as he said, "What did I do?" Police then pulled Petitioner out of his car, tackled him to the ground, and maced him as he said "I didn't do anything." Officers found the gun after they secured Petitioner and searched the car for about a minute. Ms. Robinson testified that she was never contacted by Petitioner's trial counsel to testify. She explained that Petitioner had not wanted her to get involved because she might not be viewed as credible due to the fact that she is his sister.

Charlotte Steffen-Ramirez, Petitioner's trial counsel in the matter, testified that Petitioner told her he thought the 911 call was a setup and was upset about that. He never told her that others had been in the vehicle with him or alerted her as to the availability of any witnesses. Ms. Steffen-Ramirez also testified that Petitioner admitted to her that the gun was his and that it was on the passenger seat when the police arrived. After listening to the 911 tape, she concluded the police had reasonable suspicion to investigate the call based on the seriousness of the reported incident and specificity of

the vehicle description and location. Based on this review of the 911 tape and her interviews with Petitioner, in which he stated the gun was in plain view, Ms. Steffen-Ramirez concluded that Petitioner did not have a viable case for a motion to suppress.

The district court determined that the gun was in plain view on the passenger seat and that Petitioner exited the car and acted evasively when the officers approached the vehicle, thus resolving all factual disputes in favor of trial counsel and the police officers and against Petitioner and his sister. Petitioner has not shown these determinations to be clearly erroneous nor has he rebutted the state court's factual findings by clear and convincing evidence. Absent such a showing, we give due deference to these and the state court's factual findings. The district court also reviewed a transcript of the 911 call and determined that the totality of the circumstances of the call contained sufficient indicia of reliability to provide the police with reasonable suspicion to detain Petitioner.

### 2. The 911 Call

The transcript of the call reads as follows:[3]

2:44 p.m. Telephone ringing.

OPERATOR: 9-1-1, emergency.

CALLER: Is this the Highland Park Police?

OPERATOR: No sir, this is Detroit.

CALLER: OK. There's a guy in a yellow cab car right here on Elmhurst[. T]here' been a shootin' here just now.

OPERATOR: OK. He shot somebody?

CALLER: No, he shot at a house just now. I don'[t] know if a person got hit or not, I'm across the street at 59 . . .

OPERATOR: 59 what?

---

[3]Petitioner prepared this unofficial transcript of the 911 call and the dispatcher's broadcast of the call to police. The district court reproduced it in its opinion and, as the State made no objection, accepted it as accurate. As the State has not objected on appeal either, we do likewise.

CALLER: Elmhurst.

OPERATOR: What is they [sic] address?

CALLER: He's in a yellow car outside the house.

OPERATOR: What is the address of the house he shot into?

CALLER: Ok. I guess 56 Elmhurst.

OPERATOR: Is he still there?

CALLER: Yeah, he is.

OPERATOR: A yellow cab or yellow car?

CALLER: It used to be a cab[;] he made it into his own car.

OPERATOR: Is he black or white?

CALLER: Black.

OPERATOR: What is he wearing?

CALLER: I don't know what he's wearing, man.

OPERATOR: So he's driving a yellow car?

CALLER: Yeah, he's out there now.

OPERATOR: He just shot into this window?

CALLER: Yeah, into this house.

OPERATOR: I'll request the police sir, thank you.

At 2:46 p.m., the dispatcher broadcast this announcement:

DISPATCHER: County units in 16 we're getting 56 Elmhurst, has black male driving a yellow vehicle, he's firing shots into that address. County units in 16 for 56 Elmhurst on a black male firing shots into that house.

UNIT: County 570 (inaudible)

DISPATCHER: OK County 570—I have you on the way—use caution there.

UNIT: What's the address?

DISPATCHER: 56 Elmhurst. 56 Elmhurst. Black male driving a yellow vehicle firing shots into that address.

UNIT: OK.

DISPATCHER: OK.

At 2:48 P.M., another unit responded to the broadcast as follows:

UNIT: County Sam 1609. Radio.

DISPATCHER: County Sam 609.

UNIT: I'm going to (garbled) as well.

DISPATCHER: OK.

### 3. Point of Seizure

We look first to the moment Petitioner was actually "seized," thereby implicating the Fourth Amendment, to determine if the seizure was justified by reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968) (stating that courts look to "whether the officer's action was justified at its inception" in determining the reasonableness of his actions). The Supreme Court has stated, "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id*. at 19 n.16. Absent physical force, a seizure requires submission to a show of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Petitioner was not yet seized when he saw officers approaching his vehicle with their guns drawn because he did not submit to their show of authority; rather, he jumped out of his vehicle and began walking away. *See United States v. Smith*, 594 F.3d 530, 539 (6th Cir. 2010) (holding that defendant was not seized when he attempted to pass

by officers in an apartment entryway because he did not "submit to [officers'] show of authority but, instead, tried throughout the encounter to push past the officers"); *cf. United States v. Johnson*, 620 F.3d 685, 691 (6th Cir. 2010) (holding that defendant was seized when he stopped after being ordered to stop by police). Once Deputy Kozlowski grabbed him, Petitioner was unquestionably seized. *See Hodari D.*, 499 U.S. at 629 (finding that Hodari was not seized until he was tackled because he did not comply with an officer's injunction to halt). Up to the point of seizure, then, the officers were acting on the basis of the information in the 911 call and Petitioner's conduct as they approached the vehicle.

### 4. Reasonable Suspicion for a Stop

We agree with the district court's determination that the 911 call and Petitioner's evasive conduct gave rise to reasonable suspicion that Petitioner was involved in a shooting, justifying an investigatory stop. We start with the general rule that a police officer may conduct an investigatory stop if he has a "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place*, 462 U.S. 696, 702 (1983) (citing *Terry*, 392 U.S. at 22). It is not enough to have "an inchoate and unparticularized suspicion or 'hunch,'" *Terry*, 392 U.S. at 27, but "the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause," *Alabama v. White*, 496 U.S. 325, 330 (1990) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

Where an informant tip, rather than police observation, is the basis of an investigatory stop, the tip must exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (quoting *White*, 496 U.S. at 327). The tip is evaluated under a "totality of the circumstances" standard. *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (evaluating whether anonymous informant tip gave rise to probable cause); *White*, 496 U.S. at 328-29 (applying *Gates*' totality of the circumstances standard to determine if anonymous tip gave rise to reasonable suspicion). An informant's veracity, reliability, and basis of knowledge are highly relevant to the analysis. *Gates*, 462 U.S. at 231. Where a tip

cannot be verified because it is anonymous, the Supreme Court recognizes the probative value of "corroboration of details of an informant's tip by independent police work." *Id.* at 241.

In *White*, an anonymous phone tip stated that a woman would be leaving 235–C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of cocaine. 496 U.S. at 327. This tip, substantially corroborated by the police, was sufficient to justify an investigatory stop. *Id*. at 332. In *Florida v. J.L.*, however, a tip from an unknown caller from an unknown location, stating merely that J.L. was standing at a particular bus stop, dressed in plaid, and armed with a gun, did not contain sufficient indicia of reliability to establish reasonable suspicion for a stop. 529 U.S. at 271-72. Significantly, the tip was from a completely anonymous caller who provided no predictive information whereby the police could test the informant's knowledge or credibility. An accurate description of the suspect's location and appearance was not enough because such a tip "does not show that the tipster has knowledge of concealed criminal activity." *Id*. at 272. And, "[a]part from the tip, the officers had no reason to suspect [J.L.] of illegal conduct." *Id*. at 268.

Petitioner contends that *J.L.* controls his case because the 911 call here was likewise an anonymous, uncorroborated tip. We find Petitioner's case distinguishable for four reasons. First, we agree with the district court's conclusion that this call was not completely anonymous. The district court found that "[t]he call 'was made by a citizen-tipster, who was an eyewitness to the events [] he reported to the police,' and who provided his address to the police dispatcher." *Robinson*, 2010 WL 4942839, at *9 (quoting *United States v. Reed*, 1 F. App'x 706, 708 (9th Cir. 2001)). Justice Kennedy explained in his concurring opinion in *J.L.* that in assessing the reliability of a tip, a court may consider the fact that an informant places his anonymity at risk. *J.L.*, 529 U.S. at 275 (Kennedy, J., concurring) ("[A] tip might be anonymous in some sense yet have certain other features, either supporting reliability or narrowing the likely class of informants, so that the tip does provide the lawful basis for some police action."). The

Tenth Circuit, in *United States v. Brown,* 496 F.3d 1070 (10th Cir. 2007), found persuasive the fact that a 911 caller, though she did not leave her name or number, identified herself as the crime victim's friend and stated that she had been with the victim earlier that day.  The court reasoned:

> [I]t was reasonable for the officers to believe a limited number of people were both [the crime victim's] friend and present in her apartment on the morning [in question].  The caller in this case belonged to a relatively small population, and therefore is not analogous to the anonymous caller in *J.L.* who did not distinguish him or herself from the more than two million people who lived in Miami–Dade County.

*Brown*, 496 F.3d at 1076.  While the identifying information provided in the 911 call here was minimal—the caller did not claim to live at the reported address or assert any other connection to it—the address is an indicium of reliability that adds to the totality of the circumstances and distinguishes the call from the completely unidentifiable tipster in *J.L.*

Second, the 911 call here was a contemporaneous eyewitness account.  Firsthand knowledge and contemporaneity weigh in favor of a statement's reliability.  This Court, in evaluating an in-person tip, found that an informant's proximity in time and space to the reported criminal activity indicated the tip was reliable "because it reflects that the informant acquired the information firsthand."  *Henness v. Bagley*, 644 F.3d 308, 318 (6th Cir. 2011) (citing *United States v. Chapman*, 305 F.3d 530, 534 (6th Cir. 2002)).  Other circuits have similarly found eyewitness tips reliable where they are over the phone or anonymous.  *See United States v. Terry-Crespo*, 356 F.3d 1170, 1176-77 (9th Cir. 2004) (analogizing to the "excited utterance" exception to the hearsay rule in finding that a victim-informant's tip, made immediately after the alleged crime, was reliable); *see also Brown,* 496 F.3d at 1076-77 (finding that firsthand knowledge and contemporaneity with the described events increased the reliability of an anonymous 911 call); *United States v. Perkins*, 363 F.3d 317, 322 (4th Cir. 2004) ("The [unnamed] tipster's basis of knowledge—a contemporaneous viewing of the suspicious activity—enhanced the tip's reliability.").

Third, unlike *J.L.*, the call in this case did not simply report a man potentially carrying a gun but described shots being fired. While we have not yet addressed whether a tip reporting an ongoing emergency is entitled to a greater degree of reliability than a non-emergency tip, our sister circuits that have considered the question have found exigency to matter. *See United States v. Hicks*, 531 F.3d 555, 559 (7th Cir. 2008) (listing circuit decisions affording greater reliability to emergency calls than to anonymous tips concerning general criminality). The Second Circuit has aptly captured the reasons for this:

> The higher degree of reliability is rooted in the special reliability inherent in reports of ongoing emergencies. Given the greater reliability of an emergency 911 call, the requisite level of corroboration is lower. This approach recognizes the need for police to act on reports of an emergency situation without delay, but still requires police officers to corroborate allegations of criminal activity in some meaningful way.

*United States v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009) (internal citations and quotations omitted). We consider such reasoning persuasive and find that the emergency nature of the call in this case adds to the totality of the circumstances comprising reasonable suspicion. Further, this finding is consistent with *J.L.*, which acknowledged that its holding did not extend to emergency situations. *See J.L.*, 529 U.S. at 273 ("The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability.").

Fourth, reasonable suspicion in this case was based on more than just the 911 call. There is evidence the Petitioner acted evasively upon seeing police approach, jumping out of the car while yelling, "I've done nothing wrong!" and walking away from Deputy Kasholo after being ordered to stay put. Nervousness, hurrying away from the police, and other evasive behavior are relevant factors in the reasonable suspicion analysis. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006) (taking into account the fact that defendant

"hurried" away in a "semi-running" manner from the police in determining whether reasonable suspicion existed for a stop).

Based on the totality of the circumstances, we find that the officers reasonably suspected Petitioner of a shooting and that their investigatory stop was thus justified. We do not decide whether any of these factors alone would establish reasonable suspicion. We find simply that, here, the information given in the 911 call, in addition to the Petitioner's conduct when confronted by the police, sufficed to justify a stop of the Petitioner.

### 5.  Probable Cause for Arrest

Having determined that Petitioner was justifiably stopped, we also find that he was then lawfully arrested. We agree with the district court that the gun in plain view and Petitioner's crime of resisting and obstructing the officers established probable cause to arrest him and affirm on that basis. *Robinson*, 2010 WL 4942839, at *10-11.

## C.  Ineffective Assistance of Counsel Claim

As Petitioner has failed to demonstrate a meritorious Fourth Amendment claim, as required by *Kimmelman v. Morrison*, 477 U.S. 365 (1986), he cannot show that he was prejudiced by trial counsel's conduct. Even had trial counsel sought and been granted a suppression hearing and introduced evidence of the 911 call, such evidence would not have weakened the validity of Petitioner's stop and arrest. To the contrary, we agree with the district court that the circumstances of the 911 call actually contributed to the existence of reasonable suspicion.

Petitioner's reliance on *Northrop v. Trippett*, 265 F.3d 372 (6th Cir. 2001), in which this Court found trial counsel ineffective for not filing a motion to suppress, is inapposite. The petitioner's Fourth Amendment claim in *Northrop* was meritorious, as the anonymous tip on which the *Terry* stop was predicated was almost exactly like the tip in *J.L.*—a call to the police department from an unknown caller at an unknown location, which alleged general criminality rather than an ongoing emergency. *Northrop*, 265 F.3d at 382-83. The case at hand is distinct because Petitioner's Fourth

Amendment claim is without merit—the tip here contained more indicia of reliability than that in *J.L.*, and the officers were operating in response to Petitioner's nervous, evasive behavior in addition to the tip.

Petitioner also contends that trial counsel was ineffective for failing to investigate witnesses who told police that there had been no shooting. This argument is similarly unavailing because the failure to interview these witnesses did not prejudice Petitioner. While a lack of corroboration certainly dilutes the probative value of an anonymous tip, *see Gates*, 462 U.S. at 241-43, here, the officers were acting on information with more indicia of reliability than a purely anonymous tip. Corroboration is more important where police act solely on the strength of an anonymous tip, as it is the only way to establish the informant's reliability. As the Supreme Court has acknowledged, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity" and requires "something more" before police may conduct a stop or arrest. *White*, 496 U.S. at 329 (citing *Gates*, 462 U.S. at 227). "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972)). The tip here, as we have explained, was not "completely lacking in indicia of reliability," and the police stop was further bolstered by Petitioner's evasive conduct. Neither trial counsel's failure to interview witnesses nor her decision not to file a motion to suppress prejudiced Petitioner; thus, her actions were not constitutionally ineffective.

## V.  Conclusion

For the reasons above, the district court's denial of habeas relief is **AFFIRMED**.