NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0257n.06

No. 20-5511

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

RAKIM MOBERLY,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

FILED
May 27, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

Before: NORRIS, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. Rakim Moberly pled guilty to three firearm and drug-possession offenses, reserving the right to appeal the district court's denial of his suppression motion. We reject his arguments and affirm.

## I.

On the morning of April 11, 2019, a woman called 911 to report a "disorder with a weapon" at her apartment complex on McCullough Drive in Lexington, Kentucky. She directed police to Apartment 52 and described the suspect, whom she did not know, as a black male with dreadlocks, a brown jacket, and a silver Oldsmobile. She said the suspect had a gun. Police dispatched Officer Ryan Bedtelyon to the scene with these details and updated him while en route: The caller said that she had been out all night "watching her apartment," that her apartment had just been burglarized, and that she was upset that the suspect was "watching her." She called back minutes later to report that she had run into another building "to get away from" the suspect. The caller

clarified that she did not see a gun but said that the suspect had "something heavy" in his left coat pocket, which "might be a gun." Officer Bedtelyon soon pulled up to the apartment complex, where he found a group of people and what looked like a silver Oldsmobile parked near the entryway of Apartment 52. The officer also spotted the suspect—the only person with dreadlocks and a dark jacket—next to the entryway and to the left of the larger group.

Officer Bedtelyon began to engage the suspect, later identified as Moberly, about the calls to dispatch. Their interaction, captured on the officer's body camera, lasted less than three minutes. According to Bedtelyon, Moberly initially appeared "nervous" and grew "agitated" while describing the conflict between him and the caller. As a "way of creating some rapport to calm [Moberly] down," Officer Bedtelyon said, "I think she has some mental issues, but I'm just shooting you straight. You don't got no weapons or nothing on you?" Moberly shook his head no. The officer relayed the woman's allegation that Moberly had a firearm and asked to pat him down given the nature of the call. Moberly declined: "I do mind, 'cause this got nothing to do with me and if she got threat[ened], I do apologize but that wasn't intended." Officer Bedtelyon then declared that, for his own safety, he would conduct a pat-down anyway. Moberly turned towards the officer, who asked if Moberly was "squaring up" on him. Moberly said that he was not, and the officer again asked if Moberly was armed. At that point, Moberly admitted that he had a gun in his left coat pocket.

Officer Bedtelyon recovered the firearm and ran a background check, which revealed that the firearm was stolen and that Moberly was a convicted felon. The officer then placed Moberly under arrest and took him to a detention center, where he was found to be in possession of fentanyl, methamphetamine, cocaine, and $400.

A federal grand jury thereafter indicted Moberly on firearm and drug-related counts. Moberly moved to suppress the evidence upon which the charges were based, arguing that Officer Bedtelyon had violated the Fourth Amendment when he conducted the pat-down. The district court held an evidentiary hearing, where Bedtelyon testified and the government introduced his body-camera footage. The district court denied the suppression motion, reasoning that Bedtelyon had "reasonable articulable suspicion" for both an investigatory stop and the pat-down. Moberly then entered a conditional guilty plea to three of the five charges: possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Moberly to 128 months' imprisonment. This appeal followed.

## II.

Moberly challenges the district court's denial of his motion to suppress. We review the district court's legal conclusions de novo and its factual findings for clear error, viewing the evidence in the light most favorable to the district court's decision. *See United States v. Collazo*, 818 F.3d 247, 253 (6th Cir. 2016).

A police officer may conduct a brief, investigatory stop if he has "reasonable suspicion" of a person's involvement in criminal activity—past, present, or future. *See Robinson v. Howes*, 663 F.3d 819, 828 (6th Cir. 2011). Reasonable suspicion requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the continued detention. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). We look to the totality of the circumstances to determine whether reasonable suspicion existed. *See Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003). When an officer makes a lawful investigatory stop, he may also perform a

precautionary frisk for weapons if he has reasonable suspicion that the person may be armed and dangerous. *See United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016). The parties here agree that Officer Bedtelyon had detained Moberly to investigate and would have conducted a pat-down had Moberly not disclosed the firearm; the question is whether the officer had reasonable suspicion to do so. *See Terry*, 392 U.S. at 30.

Moberly first challenges the investigatory stop, arguing that Officer Bedtelyon had no reason to believe that he was engaged in criminal activity. The government responds that Moberly waived this argument in his plea agreement and can only challenge the subsequent frisk. We review de novo whether Moberly waived this argument. *See United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005). Moberly's appellate waiver reserved only his "right to appeal the District Court's denial of his pretrial motion to suppress as stated in paragraph 1." That first paragraph, in turn, reserved only "the right to appeal the District Court's determination in denying his motion to suppress that on April 11, 2019, Officer Bedtelyon had reasonable and articulable suspicion to be [sic] believe he was armed and dangerous justifying a *Terry* pat-down frisk." Moreover, Moberly admitted that officers were dispatched regarding "a person acting suspicious who might be in possession of a firearm" and that, upon arrival, the police "located an individual matching the description of a possible suspect, later identified as Rakim Moberly." These facts gave Officer Bedtelyon "a particularized and objective basis" for suspecting Moberly of criminal activity—and thus reasonable suspicion to stop him to inquire further. *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010). Thus, Moberly both waived his challenge to the initial investigatory stop and admitted facts that made it lawful. *See United States v. Toth*, 668 F.3d 374, 377–78 (6th Cir. 2012).

That leaves only the question whether Officer Bedtelyon had reasonable suspicion to believe that Moberly was armed and dangerous at the time of the search. We review this question

de novo, asking whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety, or that of others, was in danger. *See Pacheco*, 841 F.3d at 390.

A tip from an identifiable informant who gives reasonably detailed information can provide reasonable suspicion, especially where an investigating officer's own observations contribute to his suspicions. *See United States v. Gatson*, 776 F.3d 405, 408 (6th Cir. 2015). Here, the caller identified herself when she directed 911 to her apartment regarding a "disorder with a weapon." The caller also spoke to police officers at the scene. *See Robinson*, 663 F.3d at 829. Although she revised her initial report, the caller first advised seeing a handgun, and Officer Bedtelyon knew that she had run from the suspect and her apartment, which allegedly had been burglarized the night before. *See United States v. McMullin*, 739 F.3d 943, 946–47 (6th Cir. 2014). Moreover, when Officer Bedtelyon arrived at the complex, he found a scene consistent with the dispatch: a group of people congregated outside the specified apartment, close to where the described vehicle was parked. The caller was among that group, and a suspect matching her description stood nearby.

Moberly responds that these circumstances failed to provide reasonable suspicion because Moberly was wearing a gray sweatshirt and standing near a gold Buick Le Sabre—different from the brown jacket and the silver Oldsmobile that the caller had reported. According to Moberly, those inaccuracies, combined with Officer Bedtelyon's comment that the caller had "mental issues," showed that the initial 911 tip was not "reliable in its assertion of illegality." *See Florida v. J.L.*, 529 U.S. 266, 272 (2000). But the touchstone of the Fourth Amendment is reasonableness, not perfection. *See Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014). The facts reported by the caller and those observed on scene, though not an exact match, were similar enough for the officer reasonably to believe that Moberly was the suspect who the caller had said was potentially

armed:  the gray sweatshirt was dark; Moberly was the only person onsite with dreadlocks; and the color, make, and model of the Buick closely resembled a silver Oldsmobile.  *See Hill v. California*, 401 U.S. 797, 804–05 (1971).  And contrary to Moberly's contention, Officer Bedtelyon's remark that the woman had "mental issues"—an offhanded attempt at de-escalation—does not undermine the officer's reliance on her tip.  *See Robinson*, 663 F.3d at 828–29.

Moreover, once they began talking, Moberly gave Officer Bedtelyon no reason to dispel a reasonable fear for his own safety or that of others.  *See Terry*, 392 U.S. at 30.  Rather, when Moberly relayed his side of the story, he apologized for unintentionally making the caller feel threatened—which corroborated the caller's report that she had interacted with him.  Officer Bedtelyon further testified that Moberly was "defensive" during their conversation and then turned to "blade himself" in what the officer considered to be a "defensive stance."  Viewed in the light most favorable to the district court's decision, these circumstances gave Officer Bedtelyon reason to believe that Moberly had a firearm, as the caller initially reported, and that the officer's safety, or the safety of the larger group, was in danger.  Officer Bedtelyon therefore had reasonable suspicion to justify a limited pat-down for weapons, and the district court properly denied Moberly's motion to suppress.

The district court's judgment is affirmed.