NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0867n.06

No. 09-2258

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROBERT GERARD PLUMMER,

      Petitioner-Appellant,

v.

ANDREW JACKSON, Warden,

      Respondent-Appellee.

_____/

**FILED**

*Aug 08, 2012*

LEONARD GREEN, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

Before:      KENNEDY, MARTIN, and STRANCH, Circuit Judges.

      BOYCE F. MARTIN, JR., Circuit Judge. Robert Gerard Plummer appeals the district court's denial of his petition for a writ of habeas corpus and the denial of his request for an evidentiary hearing pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254. Plummer argues on appeal that the district court erred in finding that the Michigan state court decision dismissing Plummer's claim of ineffective assistance of counsel was not an unreasonable application of clearly established Supreme Court law, and that the district court should have at least granted his request for an evidentiary hearing to further develop the facts related to his ineffective assistance claim. For the following reasons, we **VACATE** the judgment of the district court and **REMAND** for an evidentiary hearing.

I.

The Michigan Court of Appeals offered a detailed factual account of this case in *People v. Plummer*, 581 N.W.2d 753, 755-56 (Mich. Ct. App. 1998). We provide a brief summary of the relevant facts below.

Robert Plummer[1] and his brother, Mark Plummer, were at the New Image Lounge in Niles, Michigan, during the early morning of September 18, 1995. Damon Hatcher, the decedent, and his relative, Kevin Day, were also present.

At approximately 1:30 a.m., Day and Mark Plummer became engaged in an argument in the New Image Lounge pool room. The petitioner and Hatcher were also in the pool room at this time. A witness testified that Day punched Mark Plummer in the jaw, causing Mark Plummer to fall to the ground. When Mark Plummer stood up, Day hit him again. Mark Plummer fell again, at which point the petitioner attempted to insert himself into the fight to help his brother; a bystander prevented him from doing so. At this time, Hatcher ran toward Day, yelling "man, break that up." Hatcher tripped and fell against the wall as he approached the spot where Day and Mark Plummer were fighting. Several witnesses testified that Robert Plummer had pulled out a gun by this time and that he fired a shot at Hatcher after Hatcher tripped. Hatcher, who had been shot in his upper back and through his aorta, bled to death.

Another patron of the New Image Lounge, Christine Joliff, attempted to flee after seeing a gun and hearing gunfire. She was shot in the leg while trying to exit the Lounge.

---

[1] Petitioner is referred to as both "Robert Plummer" and "Plummer" throughout the opinion; his brother is referred to only by his full name, "Mark Plummer," to avoid confusion.

Robert Plummer and Mark Plummer were apprehended by police outside the New Image Lounge. Police attempted to arrest Day but a group of patrons prevented the officers from approaching him and he was able to leave the scene without being detained.

Plummer was charged with first-degree premeditated murder, Mich. Comp. Laws § 750.316; assault with intent to commit murder, Mich. Comp. Laws § 750.83; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. His case proceeded to a jury trial.

During voir dire, Plummer's counsel told the jury that Plummer, and other witnesses, would testify in support of a theory that Plummer shot Hatcher and Joliff in self-defense. Specifically, Plummer's counsel stated to the jury:

> The judge has told you the charge here is one of murder, and Robert Plummer has entered a plea of not guilty to that charge. He is going to testify, and you will hear other witnesses testify in this regard, that on the date in question he believes he was acting in lawful self-defense of both himself and his brother that was with him in the bar.

However, at the end of the prosecution's case in chief, Plummer's counsel told the trial court that "to this point [Plummer has] indicated to me that he was prepared to testify. At—just at the lunch break he's informed me that he doesn't wish to testify." The trial court then conducted a colloquy on the issue with Plummer, inquiring whether Plummer was satisfied with his counsel's work, whether he understood his constitutional right to testify or not testify, and whether he understood certain consequences of his decision to not testify. Contrary to his counsel's earlier promise to the jury, Plummer did not testify. Because Plummer did not testify, his character witnesses were also not able to testify.

Plummer's counsel presented two arguments to the jury at trial: first, that the prosecution had not proven that Plummer was the person who shot Hatcher and Joliff, and second, that, if Plummer was in fact the shooter, he had acted in self-defense. The jury found Plummer guilty.

Plummer was convicted in Michigan state court of first-degree murder, assault with intent to murder, and possession of a firearm during the commission of a felony. Plummer filed a direct appeal with the Michigan Court of Appeals, claiming ineffective assistance of counsel and insufficient evidence to support the jury verdict of first-degree murder. The Michigan Court of Appeals declined his motion for an evidentiary hearing on his claim of ineffective assistance, but, finding merit to his second argument, remanded to the trial court for entry of a judgment of conviction of second-degree murder. On remand, he was sentenced to concurrent terms of twenty to eighty years' imprisonment for second-degree murder, ten to eighty years' imprisonment for assault with intent to murder, and two years' imprisonment for possession of a firearm during the commission of a felony. The Michigan Court of Appeals affirmed this sentence, and Plummer filed an application for leave to appeal in the Michigan Supreme Court. This application was denied.

In 2002, Plummer filed a petition for writ of habeas corpus in the district court. The district court dismissed the petition for failure to exhaust state court remedies. Plummer filed a motion for relief from judgment in the state trial court on March 10, 2003, raising claims of ineffective assistance of counsel and newly discovered evidence. The state trial court denied his claims, as did the Michigan Court of Appeals and the Michigan Supreme Court.

In November 2006, Plummer again filed a petition for a writ of habeas corpus in district court, claiming, among other things, ineffective assistance of trial counsel. The district court issued

an order denying the petition and denying a certificate of appealability. Plummer filed motions for reconsideration and for a certificate of appealability, all of which were denied by the district court. Plummer requested a certificate of appealability from this Court. We granted his request. On appeal, Plummer argues that his trial counsel was constitutionally ineffective because defense counsel promised the jury in voir dire that Plummer would testify in support of a theory of self-defense, even though Plummer ultimately chose not to testify. Plummer appeals the district court's decision to deny his petition for a writ of habeas corpus and its decision to deny his request for an evidentiary hearing to develop the facts related to his ineffective assistance of counsel claim.

II.

This Court reviews the district court's legal conclusions in a habeas proceeding de novo and reviews its factual findings for clear error. *Awkal v. Mitchell*, 613 F.3d 629, 638 (6th Cir. 2010) (en banc), cert denied, 131 S. Ct. 1002 (2011). We review the district court's denial of Plummer's petition for a writ of habeas corpus pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996. *See Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). Under these standards, as laid out in *Black v. Bell*, 664 F.3d 81, 90-91 (6th Cir. 2011) (quoting *Murphy*, 551 F.3d at 493-94) (alterations in original):

> [A] federal court may grant a writ of habeas corpus with respect to a "claim that was adjudicated on the merits in state court proceedings" if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A habeas petition may also be granted if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). A state-court decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams* [*v. Taylor*, 529 U.S. 362, 405 (2000)]. A state-court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 407–08, or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context," *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000).

This Court's review of a state court decision under section 2254(d)(1) is "limited to the record that was before the state court." *Id.* (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011)). "However, if the claim was never 'adjudicated on the merits' in state court, the claim does not fall under 28 U.S.C. § 2254(d) and *Pinholster* does not apply. In such cases, a federal habeas court may order an evidentiary hearing . . . and decide the habeas petition under pre-[Antiterrorism and Effective Death Penalty Act of 1996] standards of review." *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011) (citing *Pinholster*, 131 S.Ct. at 1401).

This Court reviews the district court's denial of Plummer's request for an evidentiary hearing under the abuse-of-discretion standard. *See Ivory v. Jackson*, 509 F.3d 284, 297 (6th Cir. 2007). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Johnson*, 569 F.3d 619, 623 (6th Cir. 2009) (internal quotation marks omitted).

III.

Plummer claims the district court erred in finding that the state court's denial of his ineffective assistance of counsel claim was not an "unreasonable application of *Strickland* [*v.*

*Washington*, 466 U.S. 668 (1984)]," and also that the district court erred by denying him an evidentiary hearing on his ineffective assistance of counsel claim. Plummer argues that his counsel performed deficiently, and in a manner that prejudiced Plummer, when he told the jury that Plummer would testify even though Plummer did not intend to testify. In contending that the district court should have held an evidentiary hearing to investigate his ineffective assistance of counsel claim, Plummer argues that the state courts failed to give him an opportunity to discover and present the facts necessary to develop this claim. We begin by considering Plummer's argument that he should have been granted an evidentiary hearing.

A.     Diligence in Developing Claim

Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal court shall not hold an evidentiary hearing on a claim for which the petitioner "failed to develop the factual basis" in state court unless the petitioner meets certain standards required by the Act. *See* 28 U.S.C. § 2254(e)(2). However, where a petitioner has been diligent in attempting to develop the facts of his claim in state court and is not at fault for the failure to successfully do so, "the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Where a petitioner was diligent in developing his claim in state court, "the decision to grant an evidentiary hearing is 'generally left to the sound discretion of district courts.'" *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "Diligence for purposes of [the Act] depends upon whether the prisoner made a reasonable

attempt, in light of the information available at the time, to investigate and pursue claims in the state court." *Robinson*, 663 F.3d at 824 (internal quotation marks omitted).

Plummer made repeated requests for an evidentiary hearing in the Michigan courts, including making a motion on direct appeal to remand to the trial court for a hearing on ineffectiveness of counsel. Plummer also submitted in state court a supporting merits brief and affidavits attempting to establish his counsel's deficient performance. Thus, we conclude that Plummer made a reasonable attempt to investigate and pursue his claim in the Michigan courts; he has acted with diligence and his request for an evidentiary hearing is not subject to the section 2254(e)(2) limitations. *See, e.g.*, *Bowling v. Parker*, 344 F.3d 487, 511-12 (6th Cir. 2003).

B.      Entitlement to an Evidentiary Hearing

In deciding whether to grant an evidentiary hearing, a federal court considers whether a hearing would enable the applicant "to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Ata*, 662 F.3d at 742 (footnote and internal quotation marks omitted). "[A] habeas petitioner is generally entitled to such a hearing if he alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Bowling*, 344 F.3d at 512 (internal quotation marks omitted). We apply these principles in considering whether the district court abused its discretion in finding that Plummer was not entitled to an evidentiary hearing.

It is undisputed that the state court did not hold a "full and fair evidentiary hearing" on Plummer's ineffective assistance of counsel claim. *See Plummer*, 581 N.W.2d at 760 (noting that the Court of Appeals of Michigan limited its review of the ineffective assistance of counsel claim

"to errors apparent on the record"). Thus, we move on to determine whether Plummer has alleged sufficient grounds for release, and then whether relevant facts are in dispute.

Plummer alleges, as grounds for release, that his trial counsel rendered ineffective assistance and that the state court improperly dismissed this claim. To prove a claim of ineffective assistance of counsel, Plummer must show that (1) his counsel's performance was deficient, meaning that it "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and (2) counsel's deficient performance was prejudicial to the defendant in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To show that the state court unreasonably applied *Strickland*'s deficiency prong to the facts of Plummer's case, Plummer must demonstrate that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). In reviewing the prejudice prong, the Supreme Court has held that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Plummer challenges the state court's rejection of his claim that his trial counsel acted ineffectively by representing to the jury during voir dire that Plummer would testify even though, Plummer contends, he did not intend to testify. The district court denied Plummer's petition and his request for an evidentiary hearing, finding that the state court's rejection of this claim was not contrary to, and did not involve "an unreasonable application of, clearly established federal law." 22 U.S.C. § 2254(d)(1). Plummer argues that his counsel's statements to the jury during voir dire constituted deficient performance and prejudiced Plummer. The state argues that Plummer's

counsel's actions were not unreasonable, and therefore not deficient, because Plummer's counsel reasonably believed at the time of voir dire that Plummer intended to testify and Plummer only later changed his mind about whether to take the stand. The transcript of the colloquy between the state court and Plummer following his counsel's mid-trial announcement that Plummer would not testify does not provide evidence of whether Plummer suddenly changed his mind; the trial judge did not ask questions regarding the timing of Plummer's decision or Plummer's prior expressions to counsel about his intention to testify or not. The record is not developed enough for us to draw a conclusion regarding Plummer's ineffective assistance of counsel claim, but Plummer has nonetheless sufficiently alleged ineffective assistance of counsel to be due an evidentiary hearing on the matter.

This Court found, in *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010), that "it was objectively unreasonable for [defendant's] trial attorney to decide before trial to call . . . a [certain] witness, make that promise to the jury, and then later abandon that strategy, all without having fully investigated [the witness] and her story prior to opening statements." While the testimony involved in *English* was somewhat different than here because it was from a third-party witness rather than from the defendant himself, we found in *English* that it is unreasonable for counsel to promise testimony to the jury without first examining the availability and soundness of such testimony where counsel could, and should, have discovered these details prior to trial. *Id.* The First Circuit, in *Ouber v. Guarino*, 293 F.3d 19 (1st Cir. 2002), and the Seventh Circuit, in *United States ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003), have held that a counsel's mid-trial decision to break an earlier "promise" to the jury that the defendant would testify is unreasonable—unless due to an unforeseeable change of circumstances—and likely prejudices the outcome. *Id.* at 257

("[W]hen the failure to present the promised testimony cannot be chalked up to unforeseeable events, the attorney's broken promise may be unreasonable, for little is more damaging than to fail to produce important evidence that had been promised in an opening.") (citation and internal quotation marks omitted); *Ouber*, 293 F.3d at 28-30. The Third Circuit, *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166-67 (3d Cir. 1993) (citations omitted), has also addressed the unreasonableness of counsel's broken promises to provide witness testimony:

> The failure of counsel to produce evidence which [defense counsel] promised the jury during his opening statement that he would produce is indeed a damaging failure sufficient of itself to support a claim of ineffectiveness of counsel. The rationale for holding such a failure to produce promised evidence ineffective is that when counsel primes the jury to hear a different version of the events from what he ultimately presents, one may infer that reasonable jurors would think the witnesses to which counsel referred in his opening statement were unwilling or unable to deliver the testimony he promised.

Plummer's defense counsel promised the jury in voir dire that Plummer would proceed on a self-defense argument; but, at trial, defense counsel presented the different and inconsistent argument that Plummer had not fired the gun at all, and offered a self-defense theory only in the alternative. Plummer's counsel did not fulfill his promise to the jury to present Plummer's testimony and certain character witnesses that he had said would testify in support of a theory of self-defense. Plummer alleges that he had consistently expressed an intention not to testify, even prior to voir dire, and his counsel acted unreasonably by promising testimony that Plummer never intended to give and by later breaking that promise at trial. To determine whether Plummer has alleged unreasonable performance by his counsel, we must consider whether his counsel's approach fell within "the wide range of reasonable professional assistance given the circumstances." *English*, 602 F.3d at 728 (quoting

*Strickland*, 466 U.S. at 689) (internal quotation marks omitted). If, as alleged, defense counsel knew or could have known in advance that Plummer intended not to testify, defense counsel's promise to the jury of testimony he knew or could have known he probably would not be able to deliver was unreasonable and constitutes deficient performance. *See id.*; *see also Ouber*, 293 F.3d at 28-30; *Leibach*, 347 F.3d at 257; *Washington v. Smith*, 219 F.3d 620, 634 (7th Cir. 2000).

The Michigan Court of Appeals assumed—without sufficient support in the record—that Plummer "unexpectedly changed his mind about testifying." *Plummer*, 581 N.W.2d at 760. The Michigan Court of Appeals did not address the factual matter of whether Plummer's decision was a sudden change of course or, alternatively, Plummer had consistently expressed an intention not to testify and his attorney proceeded against Plummer's wishes in voir dire by promising Plummer's testimony to the jury. When considering Plummer's ineffective assistance of counsel claim, the district court also relied upon the factual assumption that Plummer had unexpectedly changed his mind, without addressing the lack of evidentiary support for this assumption in the record. Because there is insufficient evidence in the record as to the timing of Plummer's assertion that he intended not to testify, and as to whether that assertion was inconsistent with Plummer's prior statements regarding his intent to testify, we find that the district court relied on a clearly erroneous finding of fact in its evaluation of the first prong of *Strickland*. Accordingly, we find that the district court abused its discretion in determining that Plummer's counsel had not acted unreasonably. *See Johnson*, 569 F.3d at 623 (noting that "[a] district court abuses its discretion when it relies on clearly erroneous findings of fact"). Plummer has sufficiently alleged deficient performance by his counsel

to establish grounds for relief as to the first prong of his ineffective assistance of counsel claim so as to entitle him to an evidentiary hearing.

The state court made no finding on the prejudice prong of Plummer's ineffective assistance of counsel claim. Therefore, the state court did not make an "adjudication on the merits" as to the prejudice prong, and this prong is subject to de novo review not limited by the restrictions of the Antiterrorism and Effective Death Penalty Act of 1996. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (finding that a federal court's "review is not circumscribed by a state court conclusion with respect to prejudice [where] neither of the state courts below reached this prong of the *Strickland* analysis"); *see also English*, 602 F.3d at 729. Nor did the district court make a finding on the prejudice prong; the district court denied Plummer's ineffective assistance of counsel claim based on the magistrate's finding that Plummer failed to demonstrate the first prong of the *Strickland* test. The district court adopted the magistrate's report, which made no finding on the prejudice prong but noted that defense counsel's failure to fulfill a promise to present testimony "*may* often constitute ineffective assistance of counsel." (emphasis added).

Plummer argues that his counsel's deficient performance was prejudicial because there is a reasonable probability that the outcome of Plummer's trial would have been different had his lawyer not told the jury at voir dire that Plummer would later testify in support of a theory of self-defense. We have previously found prejudice where an attorney promised the jury in his opening statement that he would present a corroborating witness but, based upon later-learned facts about the witness that he could have uncovered prior to his opening statement, decided not to call her to the stand. *English*, 602 F.3d at 729 ("[W]e agree with the district court that but for counsel's ineffectiveness,

there is a reasonable probability that the outcome would have been different."). In Plummer's case,

as in *English*, *id.* at 729, the probable prejudice is clear:

> [Defense counsel's] unfulfilled promise created a negative inference against [Plummer] generally. As the First Circuit has noted, "little is more damaging than to fail to produce important evidence that had been promised in an opening." *Anderson v. Butler*, 858 F.2d 16, 17 (1st Cir. 1988). The jury in this case must have wondered what happened to [Plummer] after [his testimony] was promised . . . , and the jury may well have counted this unfulfilled promise against [Plummer] and his attorney. *See* [*Leibach*, 347 F.3d at 259] (finding unfulfilled promise by defense counsel in opening caused prejudicial negative inference as to defendant and defense counsel's credibility).

Plummer's counsel's failure to fulfill a promise to provide the defendant's *own* testimony may be

even more prejudicial than English's counsel's failure to provide a corroborating witness's

testimony, because the defendant is present in the courtroom and, in the eyes of the jury, presumably

controlled the decisions to make the original promise of testimony and to eventually not testify at

trial.

As noted above, the First and Seventh Circuits found in *Ouber* and *Leibach*, respectively, that

counsel's mid-trial breaking of a promise to the jury that defendant himself would testify likely

prejudices the outcome. Where, as in *Ouber*, 293 F.3d at 28-30:

> [A] jury is promised that it will hear the defendant's story from the defendant's own lips, and the defendant then reneges, common sense suggests that the course of trial may be profoundly altered. A broken promise of this magnitude taints both the lawyer who vouchsafed it and the client on whose behalf it was made.
>      . . . .
> . . . [U]nexpected developments sometimes may warrant changes in previously announced trial strategies.
>      . . . .
> . . . [However, where, as in *Ouber*,] [t]here were no surprises . . . the lawyer's tergiversation could not be excused by changed circumstances.

Without further development of the facts, it is unclear whether Plummer's counsel reneged on his promise due to "changed circumstances," as the state argues, or whether, as Plummer argues, there were no surprises to excuse the prejudice caused by his counsel's broken promise.

Plummer's counsel's unfulfilled promises—made to the jury pool during voir dire—likely had a prejudicial effect on the jury's view of Plummer, his case, and his lawyer, despite instructions from the court not to consider it in reaching their verdict. "[L]ittle is more damaging than to fail to produce important evidence that had been promised in an opening," *English*, 602 F.3d at 729 (internal quotation marks omitted); *see also Leibach*, 347 F.3d at 259. The prejudicial effects of breaking such a promise made to the jury in voir dire are the same as those arising from a broken promise made during an opening statement. Promises to the jury of witness testimony—especially that of the defendant—whether made during voir dire or an opening statement create expectations that, when broken, can lead a reasonable jury to draw negative inferences about the strength and integrity of the defendant's case. *See, e.g.*, *Washington*, 219 F.3d at 634 ("[T]he jury surely wondered where [certain] people were [at trial], especially Ms. Richardson who had been named on [the defendant's] Notice of Alibi and who [defense counsel] specifically mentioned at least at voir dire. There was a negative inference against [the defendant] based on their absence [at trial]."). Additionally, the evidence of Plummer's guilt was not overwhelming on its own, and several facts—such as the absence of fingerprints on the gun recovered from the crime scene, a negative test result for gunpowder residue on Plummer's hands, and Plummer's consistent statements of his innocence—could have been reasonably interpreted in Plummer's favor had his counsel not

promised Plummer's testimony as the keystone of a self-defense theory, and instead argued from the outset that Plummer had not committed the act at all.

As in *English*, there was a reasonable probability that the outcome of Plummer's trial would have been different had defense counsel not promised the jury that Plummer would testify and later reneged on this promise. We find that Plummer has sufficiently alleged both the deficient performance and the prejudice prongs of a *Strickland* claim and, therefore, has alleged grounds for release sufficient to warrant an evidentiary hearing. *Bowling*, 344 F.3d at 512.

We now consider whether relevant facts are in dispute, such that Plummer is entitled to an evidentiary hearing. Plummer alleges that his counsel acted against Plummer's wishes when defense counsel asserted in voir dire that Plummer would testify. The state argues that Plummer's counsel's statements in voir dire were, to the best of counsel's knowledge, in compliance with Plummer's intentions at that time. During the trial court's mid-trial colloquy with Plummer, no facts were elicited about whether Plummer, in his conversations with his counsel leading up to trial, had expressed an intention not to testify, nor about whether Plummer's mid-trial decision not to testify was sudden or in any way inconsistent with his previous expressions to his lawyer. In his state court appeal, Plummer submitted an affidavit, and affidavits from his father and his wife, attesting to his consistent desire not to testify and his expression of this position to his counsel, both before and after voir dire. However, the Michigan Court of Appeals did not consider these affidavits in concluding that defense counsel's performance was reasonable, instead limiting its ineffective assistance of counsel review "to errors apparent on the record." As noted above, the Michigan Court of Appeals assumed, without sufficient evidentiary support, that Plummer unexpectedly changed his mind about

testifying. *Plummer*, 581 N.W.2d at 760. The district court also relied upon this unsupported factual assumption.

We find that there are relevant facts in dispute regarding whether, at the time of voir dire, Plummer intended to testify and whether his counsel believed Plummer intended to testify. The state court record here lacks the evidence necessary for the district court to come to a determination about this factual dispute and make a finding as to whether Plummer's counsel acted deficiently by making statements in voir dire that contradicted Plummer's express wishes. An evidentiary hearing would allow Plummer the opportunity to prove his factual allegations regarding the deficiency of his counsel's performance during voir dire. *See Ata*, 662 F.3d at 742.

We find that Plummer has alleged sufficient grounds for release; that relevant facts regarding his communications with his counsel and his counsel's awareness prior to trial of Plummer's desire not to testify are in dispute; and that the state courts declined to hold an evidentiary hearing on his ineffective assistance of counsel claim despite Plummer's diligence in seeking a hearing. *See Bowling*, 344 F.3d at 512. We also find that the factual record is not sufficiently developed to determine under *Strickland* whether Plummer's counsel performed deficiently by making statements in voir dire about Plummer's intention to testify. *See Mason v. Mitchell*, 320 F.3d 604, 620-21 (6th Cir. 2003) (remanding for an evidentiary hearing where "[t]he record before us is inadequate for a meaningful review of [petitioner's] claim of ineffective assistance of counsel"). Therefore, we find that the district court abused its discretion in denying Plummer's request for an evidentiary hearing on his ineffective assistance of counsel claim, and we remand for an evidentiary hearing on this issue.

V.

We **VACATE** the judgment of the district court and **REMAND** for an evidentiary hearing.