**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0986n.06

**No. 12-2235**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| THOMAS E. SADLER, | ) | |
| | ) | **FILED** |
| Petitioner-Appellant, | ) | Nov 18, 2013 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | **ON APPEAL FROM THE** |
| CAROL R. HOWES, Warden, | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| Respondent-Appellee. | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| | ) | **O P I N I O N** |

BEFORE:     MOORE and MCKEAGUE, Circuit Judges, HELMICK, District Judge.

**David W. McKeague, Circuit Judge.** Petitioner Thomas Sadler appeals the district court's

denial of his petition for habeas corpus, in which he asserts a violation of his Sixth Amendment right

to effective assistance of counsel, as well as both the district court's and the state appellate court's

denial of his request for a post-conviction evidentiary hearing. We affirm.

**I.**

This case arose out of an incident that occurred during the late evening and early morning

hours of September 13-14, 1997. Thomas Sadler was driving in Genesee County when he offered

a woman walking alongside the road a ride, which she accepted. The parties agree that during the

ride the car crashed and that after the crash Sadler and the woman had sexual contact in a nearby

field, but they disagree on the circumstances that led to the crash and on whether the sexual contact

was consensual. During the incident, the woman suffered injuries including a broken nose, severe

swelling on her forehead and under her right eye, abrasions on her right hip, buttocks, knees, and

feet, and scrapes on her back and elbow.[1]

On October 6, 1997, Sadler was charged on six counts: Count I, Kidnapping; Count II,

Assault with Intent to Murder; Counts III, IV, and V, Criminal Sexual Conduct in the First Degree;

and Count VI, Assault with Intent to Rob While Armed. At some point during this time, Sadler

retained as counsel Gary Lengyel. On June 2, 1998, Sadler arrived in court for his trial and stated

that he intended to plead guilty. The following dialogue ensued:

> THE COURT: Do you understand if I accept your guilty pleas there'll be no trial and
> you'll give up those rights?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: By pleading guilty you also give up any right of appeal of your
> convictions.
> Do you understand that?
>
> THE DEFENDANT: Yes, your honor.
>
> THE COURT: Has anyone made you any promises or do you have any expectations
> from your pleas that we haven't covered here in the plea bargain?
>
> THE DEFENDANT: No, sir.

---

[1]There are some inconsistencies in both Sadler's and the woman's accounts of what occurred
that night. One example is that the woman said she bit Sadler's penis, but a detective later found
"nothing of the obvious on Mr. Sadler's penis or surrounding areas." *See* R. 1-3, Police Rep. at 2,
6, PageID # 116, 120. A second example is that, in a subsequent civil proceeding against Sadler,
the woman stated that her facial injuries were caused by Sadler's negligent driving, and not his
striking her with his flashight. A third example is that Sadler provided the officer in charge with
varying accounts of his contact with the woman, initially saying that he did not have sexual
intercourse with her, and later, while asking if a semen test would be done, admitting that he did
have sexual intercourse with her.

THE COURT: Has anyone threatened you or forced you in any way to enter your pleas?

THE DEFENDANT: No, sir.

THE COURT: Do you understand that once your pleas are accepted you can't come back at a later time and claim that somebody promised you something or someone forced you in some way and it wasn't disclosed here now.
Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, even though Mr. Lengyel has discussed this matter with you and he may have given you some advice, is the decision to plead guilty your choice?

THE DEFENDANT: Yes, sir.

R. 6-7, Guilty Plea at 11-12, PageID # 271-72 (emphasis added).

Sadler then gave a detailed account of the events of September 13-14, 1997. He stated that he felt upset and angry with the woman after the car crash, at which time he began holding her against her will. He stated that he threatened to hit the woman with his flashlight in an effort to steal her ring, but that he did not recall actually hitting her. On the issue of sexual contact, he stated, "I initially thought it was consensual but I know that I was still not allowing her to leave against her will and I still had the flashlight in my hand." *Id.* at 13, PageID # 273. He stated that when the woman tried to escape the field, he "[p]icked her up and carried her out there. Or more like forced her." *Id.* at 26, PageID # 286. The state trial court found Sadler's plea to be made understandingly, voluntarily, and accurately, and accepted his pleas of guilty to Count I, Kidnapping, Mich. Comp. Laws § 750.349; Count V, Criminal Sexual Conduct in the First Degree, Mich. Comp. Laws § 750.520b; and Count VI, Assault with Intent to Rob While Armed, Mich. Comp. Laws § 750.89.

In return for Sadler's plea, the prosecutor dropped three other counts concerning assault with intent to murder and first-degree criminal sexual conduct.

On June 22, 1998, Sadler moved to withdraw his guilty plea on the basis that he was innocent. The state trial court provided Sadler with a post-conviction evidentiary hearing at which Sadler again testified about the incident. Sadler testified that he decided to accept the plea after he "thought about it and talked with some friends and family and . . . got some advice from other inmates in there and consulted [Lengyel,] my attorney." R. 6-8, 06/22/98 Mot. to Withdraw Guilty Plea at 14, PageID # 319. He further stated his fear of facing six life sentences because he had a young daughter. He went on to state that he lied at his plea. He testified that he had never hit the woman with his flashlight and that her injuries had happened because of the car crash. He stated that the woman's blood had gotten on his flashlight because she twice had the flashlight in her hands. He stated that the sexual contact after the car crash was consensual.[2] With respect to the woman's lower-body injuries, he stated that he did pull and drag her "maybe 10 feet," but that he had dragged her because she had tried to leave the field without being fully clothed. *Id.* at 27–29, Page ID # 332–34.

The state trial court denied Sadler's motion to withdraw his guilty plea, noting that "the question is at what time Mr. Sadler has told the truth because Mr. Sadler has given multiple accounts of what happened on the night in question." *Id.* at 50, PageID # 355. The state trial court reasoned

---

[2]When the state trial court asked about Sadler's having had consensual sex with a woman who had a broken nose and facial injuries, Sadler answered: "It was so dark in that field I couldn't even notice any blood on her." *Id.* at 36, PageID # 341.

that Sadler's choice to plead guilty was "a pre-thought out decision . . . made understandingly; it was a voluntary and accurate plea . . . All of the circumstances surrounding the plea that was made on June 2nd, 1998 lead this Court to conclude that Mr. Sadler was telling the truth at that time, and that is the more credible story." *Id.* at 52, PageID # 357. The state trial court also noted that Sadler's revised account of the incident "stretches the imagination." *Id.* at 53, PageID # 358. The next day, June 23, 1998, the state trial court sentenced Sadler on Count I, Kidnapping, to a term of life imprisonment; on Count V, Criminal Sexual Conduct in the First Degree, to a term of 30 to 60 years; and on Count VI, Assault with Intent to Rob While Armed, to a term of life imprisonment.

In the months following sentencing, Sadler switched lawyers and claimed Lengyel unethically and erroneously advised him to plead guilty. It is unclear on what date Lengyel stopped representing Sadler, but it is clear that attorney William Branch was appointed to represent Sadler on appeal. Sadler told Branch that his plea was entered as a "stalling tactic, so he could raise money to pay [Lengyel] at Trial." R. 1-7, Letter to Lengyel at 2, Page ID # 148. On November 20, 1998, Branch sent Lengyel a letter requesting that they discuss Sadler's allegation. The letter noted Sadler's stalling-tactic allegation as well as Sadler's allegation that "he entered the Plea based on [Lengyel's] assurance that the Judge would allow it to be withdrawn." *Id.* Lengyel never responded to the letter.[3] At some point after this letter was sent, Sadler retained Earl Spuhler as counsel.

---

[3]The parties agree that Lengyel has been suspended by the State Bar of Michigan for non-payment of dues. *See* State Bar of Michigan, *Member Directory*, MichBar.org, http://www.michbar.org/memberdirectory/detail.cfm?PID=41432 (last visited Sept. 16, 2013). The government correctly notes that Lengyel was not disciplined. *See* State of Michigan Attorney Discipline Board, *Disciplined Lawyers*, ADBMich.org, http://adbmich.org/L-Chart.htm (last visited Sept. 16, 2013).

On September 13, 1999, Sadler filed a post-judgment motion to withdraw his guilty plea on the basis of ineffective assistance of counsel. Sadler requested a post-conviction evidentiary hearing[4] in order to explore whether Lengyel was ineffective. Sadler advanced his claim on three bases: first, Lengyel's alleged failure to investigate and prepare for trial, second, Lengyel's alleged advice that Sadler could later withdraw his plea, and third, Lengyel's alleged advice that Sadler should plead guilty to "buy time" and procure more funds with which to pay him. Two affidavits, one signed by Sadler and one signed by Sadler's ex-wife, relating to conversations each personally had with Lengyel, were attached to the motion. The state trial court noted its "independent recollection of this case" and reviewed Sadler's guilty plea, his initial motion to withdraw his guilty plea, and his current post-judgment motion to withdraw his guilty plea. R. 6-10, 09/13/99 Mot. to Withdraw Guilty Plea at 3, Page ID # 384. The state trial court noted "[i]f I accepted Mr. Spuhler's suggestion that defense counsel should have hired an investigator, should have hired an expert witness, it would not obviate the fact that Mr. Sadler told me, under oath, that he committed this crime and he confessed to committing the crimes." *Id*. at 7, PageID # 388. The state trial court denied the motion, noting that "if I were to accept the representations as true, it doesn't obviate the fact that he pled guilty and I found him to be credible at the time." *Id.* at 8, PageID # 389.

Sadler's counsel, Spuhler, then asked the court to rule on the specific allegation that "Lengyel coerced [Sadler] into this plea by telling him that the Judge would sentence at the low end of the Guidelines; also, that this was a stalling tactic to buy time because he was not ready for trial

---

[4]In Michigan, this type of hearing is called a *Ginther* hearing. *See People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

. . . He guaranteed Mr. Sadler that the plea would be withdrawn." *Id.* The following dialogue

ensued:

> THE COURT: Who do you anticipate testifying, Mr. Spuhler?
>
> MR. SPUHLER: Mr. Sadler, his ex-wife Tabitha Sadler, and maybe one or two people which would be very brief. And obviously I'm sure the prosecutor will have Mr. Lengyel here.
>
> [THE COURT:] Is there anything filed here to support your motion, Mr. Spuhler?
>
> MR. SPUHLER: In terms of the allegations as to the coercion, there's a very lengthy affidavit by Mr. Sadler indicating several conversations at the jail. There's an affidavit by his ex-wife that was attached to my motion.

*Id.* at 9, PageID # 390.

The state trial court then reviewed the affidavits and heard each party's arguments

concerning whether a hearing was warranted. The state trial court then stated:

> [THE COURT:] The balance of the affidavit speaks to allegations of the voluntariness of the plea. If I were to accept the allegations in the affidavit, Mr. Sadler's plea was not made voluntarily. That contradicts this Court's finding on June 2nd, 1998 that Mr. Sadler's plea was made voluntarily, understandingly, and it was an accurate plea.
>
> On page 12 of the transcript of the proceedings on June 2nd, 1998 is the following dialogue:
>
> Beginning on line 4, "The Court: By pleading guilty you also give up any right of appeal of your convictions. Do you understand that? The Defendant: Yes, Your Honor. The Court: Has anyone made you any promises or do you have any expectations for your pleas that we haven't covered here in the plea bargain? The Defendant: No, sir. [The Court:] Has anyone threatened you or forced you in any way to enter these pleas? The Defendant: No, sir. The Court: Do you understand that once your pleas are accepted you couldn't come back at a later time and claim that someone— somebody promised you something or someone forced you in some way and it wasn't disclosed here now? Do you understand that? The Defendant: Yes, sir."

Now, if I'm to believe what's advanced here on this motion, I have to conclude that Mr. Sadler lied on June 2nd.

Mr. Sadler was before this Court on a motion to withdraw his guilty plea and I concluded that he was truthful on June 2nd, 1998. I have no reason to find otherwise today. He was advised that he couldn't come back and do exactly what he's doing or attempting to do here right now. And I don't find a basis to set his plea aside. I don't find a basis for conducting any further hearing.

The motions are denied.

*Id.* at 13-14, PageID # 394-95.

Sadler's first-tier direct appeal to the Michigan Court of Appeals was lost through attorney neglect.[5] On June 23, 2009, however, a state court restored Sadler's first-tier direct appeal. Yet even despite submitting new evidence to the state court—including another letter unanswered by Lengyel and affidavits from other family members—Sadler was ultimately unsuccessful with his state court appeals. On September 9, 2009, the Michigan Court of Appeals denied Sadler's leave for appeal "for lack of merit in the grounds presented." R. 6-13, Order at 1, PageID # 435. On January 29, 2010, the Michigan Supreme Court denied Sadler's application for leave to appeal, stating that the court was "not persuaded that the questions presented should be reviewed by this Court." R. 6-14, Order at 1, PageID # 518.

On April 21, 2010, Sadler filed a petition for a writ of habeas corpus in federal court, alleging that he was denied his Sixth Amendment right to effective assistance of counsel. The district court ruled that the state court's action satisfied § 2254(d)'s on-the-merits requirement and

---

[5]It appears that Sadler's appeal was lost because it was never filed. *See generally* Pet. Br. at 14-15 (stating that Sadler's first appeal was lost due to incompetence and noting that Lengyel did not respond to letters).

noted that the state "trial court denied his motion after reviewing the supporting affidavits and stating it found no basis for setting aside the plea." R. 9, Dist. Ct. No. 10-CV-11614 at 10 n.2, PageID # 689. Because the district court applied AEDPA deference to the state court's determination, it limited Sadler to the state-court record. The district court then denied Sadler's petition for a writ of habeas corpus. This appeal followed.

## II.

The threshold issue in considering Sadler's habeas petition concerns the proper standard of review, namely, whether AEDPA deference or *de novo* review applies. "The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 131 S. Ct. 770, 783 (2011). Section 2254(d) limits the availability of federal habeas relief as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was *adjudicated on the merits in State court proceedings* unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006) (emphasis added). Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Therefore, when § 2254(d)'s on-the-merits requirement

is satisfied, habeas courts apply AEDPA deference and limit their review to the state-court record. *See id.*

The Supreme Court has observed that when the most recent state court judgment simply affirms an earlier state court's determination in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply the following presumption: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). "[A]bsent some 'indication or [state] procedural principle, to the contrary,' we must presume that an unexplained summary order is an adjudication 'on-the-merits' for AEDPA purposes." *Werth v. Bell*, 692 F.3d 486, 493 (6th Cir. 2012) (quoting *Richter*, 131 S. Ct. at 785). Accordingly, we examine the state appellate court's decision in assessing Sadler's petition. *See Guilmette v. Howes*, 624 F.3d 286, 291–92 (6th Cir. 2010) (en banc). When a later court order is unexplained, as was the state appellate court's decision here, we may also assume that the state appellate court's order "rested upon the same ground" as that of the state trial court. *Ylst*, 501 U.S. at 803.

Sadler argues that the state appellate court's action does not satisfy § 2254(d)'s on-the-merits requirement because the state appellate court relied exclusively upon the state trial court's reasoning, and the state trial court denied Sadler's request "based on a finding that . . . Sadler was truthful at the plea proceeding, [and] without analyzing" Sadler's ineffective assistance of counsel claim. Pet. Br. at 21 (emphasis omitted). Sadler further argues that the state appellate court "had no adequate record, in the absence of a hearing, to consider [Sadler's ineffective assistance of counsel] claim."

*Id.* at 22. Sadler concedes that the state trial court did provide him with a hearing on his pre-sentencing motion to withdraw his guilty plea on the basis of innocence, but he notes that he was not provided with a second evidentiary hearing on his post-sentencing motion to withdraw his guilty plea on the basis of ineffective assistance of counsel.

The government responds by noting that this court in *Werth v. Bell*, 692 F.3d 486, 492–94 (6th Cir. 2012), held that under *Richter*, a state appellate court's summary denial satisfies § 2254(d)'s on-the-merits requirement. *See* Resp. Br. at 54 (citing *Richter*, 131 S. Ct. at 784–85). With respect to the state appellate court's decision "rest[ing] upon the same ground" as that of the state trial court, *see Ylst*, 501 U.S. at 803, the government argues that the state trial court denied Sadler's motion "after reviewing the supporting affidavits and stating it found no basis for setting aside the plea[.]" Resp. Br. at 51 (internal quotation marks omitted). The government further notes that Sadler's case can be distinguished from this court's precedent in *McClellan v. Rapelje*, 703 F.3d 344, 349 (6th Cir. 2012) (finding that AEDPA did not apply), because *McClellan* turned on the issue of whether the state appellate court had access to the state trial court's record.[6]

The determination of whether the state appellate court's decision satisfies § 2254(d)'s on-the-merits requirement is guided by two recent Supreme Court cases: *Harrington v. Richter*, 131 S. Ct. 770 (2011), and *Johnson v. Williams*, 131 S. Ct. 1088 (2013). First, in *Richter*, the Court held that

---

[6]Two additional points are worth noting. First, *McClellan* involved an issue of procedural default. *Id.* at 349. Second, in *McClellan*, the request for an evidentiary hearing from the district court was granted, whereas here, the request was denied. *See id.* at 351 ("Since there was no decision on the merits concerning ineffective assistance of counsel, the *Cullen v. Pinholster* case *does not prohibit* the consideration of evidence on the merits in a later federal evidentiary hearing." (emphasis added)).

"§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" 131 S. Ct. at 785. The Court instructed habeas courts to presume that "the state court adjudicated the federal claim on the merits in the absence of any indication or state-law procedural principle to the contrary" or any "reason to think some other explanation for the state court's decision is more likely." *Id.* at 784–85. Therefore, a habeas court applies the *Richter* presumption that a state court ruling satisfies § 2254(d)'s on-the-merits requirement and is subject to AEDPA deference. *See id.* at 785.

Second, in *Williams*, the Court held that a habeas court must also "presume (subject to rebuttal) that the federal claim was adjudicated on the merits . . . when the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding." 133 S. Ct. at 1091. The Court acknowledged that "there are instances in which a state court may simply regard a claim as too insubstantial to merit discussion." *Id.* at 1095. In dicta, however, the Court noted that "while the *Richter* presumption is a strong one that may be rebutted only in unusual circumstances, it is not irrebuttable." *Id.* at 1096. The Court observed that the *Richter* presumption is rebutted in situations where state courts "overlook federal claims" as a result of "sheer inadvertence[.]" *Id.* at 1097. The Court continued as follows:

> A judgment is normally said to have been rendered "on the merits" only if it was "delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments." And as used in this context, the word "merits" is defined as "*[t]he intrinsic rights and wrongs of a case* as determined by *matters of substance*, in distinction from matters of form." If a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter.

*Id.* (internal citations omitted) (emphasis in original).

Applying this standard here, we cannot say that the state appellate court's decision was "sheer inadvertence." *See id.* The state appellate court's decision "rested upon the same ground" as that of the state trial court, which reviewed both affidavits and listened to each party's arguments concerning whether an evidentiary hearing was warranted. *Ylst*, 501 U.S. at 803. The state trial court also inquired as to what additional evidence would be presented in an evidentiary hearing. And the state trial court compared the information relating to the ineffective assistance of counsel claim against the information relating to the pre-judgment motion to withdraw and the information relating to the plea. Only after undertaking all of these steps did the state trial court deny Sadler's motion, and so the state appellate court's reliance on this record satisfied § 2254(d)'s on-the-merits requirement. Therefore, AEDPA deference applies and our review is limited to the state-court record. *See Pinholster*, 131 S. Ct. at 1398.

**III.**

The next question is whether the state appellate court's treatment of Sadler's ineffective assistance of counsel claim was "so lacking in justification" as to warrant habeas relief. *See Richter*, 131 S. Ct. at 786. AEDPA imposes a "highly deferential standard for evaluating state-court rulings" and demands that federal courts give state-court decisions the benefit of the doubt. *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal citations omitted). Accordingly, relief is warranted only if the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly-established federal law, or if the decision was based upon an unreasonable determination of the facts in light of the evidence. *See Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006) (citing 28 U.S.C. § 2254(d)). AEDPA deference requires habeas courts to withhold relief so long as

"fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (internal citations and quotation marks omitted). The Court has emphasized that even a "strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citation omitted). Thus, to obtain relief, Sadler must show that the state appellate court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

A claim alleging ineffective assistance of counsel is analyzed under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984): "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." A habeas court reviewing a state court's application of the *Strickland* standard through the prism of AEDPA checks for unreasonable, rather than incorrect, applications of federal law. *See Richter*, 131 S. Ct. at 785–86 ("AEDPA demands more."). After determining what arguments or theories could have supported the decision reached by the state court, a habeas court "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 786 ("It bears repeating than even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Thus, a "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 785 ("The likelihood of a different result must be substantial, not just conceivable.").

None of the three bases upon which Sadler advances his ineffective assistance of counsel claim meet a "so lacking in justification" or clearly unreasonable standard so as to warrant habeas relief. *Id.* at 786. First, Sadler argues that Lengyel's (alleged) failure to investigate the gravity of the woman's injuries, particularly with respect to whether the car crash caused her injuries, merits habeas relief. It is true that the car crash, and not Sadler's flashlight, could have caused her broken nose and facial injuries. But another explanation is easily reached. As noted by the district court, the woman stated that Sadler injured her face with his flashlight—which had her blood on it—and the record shows that the lower half of her body was covered in abrasions which could not have resulted from the car crash. And Sadler's version of events depends upon the notion that the woman consented to sexual contact with Sadler in a nearby field after sustaining a broken nose and multiple facial injuries. The state appellate court's rejection of this argument cannot be said to be objectively unreasonable or "beyond any possibility of fairminded disagreement." *Id.* at 787.

Second, Sadler argues that Lengyel's (alleged) erroneous advice that he could later withdraw his guilty plea, or that he would be sentenced at the low range of the guidelines, merits habeas relief. The difficulty here is that Sadler participated in a plea colloquy with the state trial court in which he was asked whether he had been promised anything and told that he would not be able to withdraw his plea at a later date. As noted above, habeas courts examine state-court decisions for unreasonable, rather than incorrect, applications of federal law, and even a "strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.* at 785–86. The state appellate court's implicit determination that Sadler was not being truthful in his account of his

interactions with Lengyel was not "so lacking in justification" as to warrant habeas relief. *See id.* at 786.

Finally, Sadler argues that Lengyel's (alleged) unethical advice to plead guilty in order to "buy time" to raise money for attorney's fees warrants habeas relief. Admittedly, the timeline of events, as well as the affidavits of Sadler and Sadler's ex-wife, supports his claim. But the state appellate court relied on the state trial court's review of those affidavits, which were deemed to be unconvincing. And, as noted above, Sadler told multiple, conflicting stories to the state trial court. Again, habeas courts examine state-court decisions for unreasonable, rather than incorrect, applications of federal law, and even a "strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Id.* at 785–86. The state appellate court's implicit determination that Sadler was not being truthful in his account of his interactions with Lengyel was not "so lacking in justification" as to warrant habeas relief. *See id.* at 786. In conclusion, Sadler's ineffective assistance of counsel claim does not overcome the highly deferential standard of review under *Strickland* and AEDPA.

**IV.**

The next question concerns whether Sadler was entitled to a post-conviction evidentiary hearing. Sadler argues that he was. Both the district court and the state appellate court denied Sadler's request. We address each in turn.

**A.**

The district court's decision to deny Sadler's request for an evidentiary hearing is reviewed for an abuse of discretion. *See, e.g.*, *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011); *Ivory v. Jackson*, 509 F.3d 284, 297 (6th Cir. 2007). Under § 2254, a district court may not grant an evidentiary hearing on a claim unless the habeas petitioner shows that:

> (A) the claim relies on-
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)-(B).

Sadler argues that because he "diligently sought to develop the factual basis of a claim for habeas relief but has been denied the opportunity by the state courts through their refusal to grant an evidentiary hearing, it is appropriate and requisite [for] a federal district court to grant a hearing under AEDPA." Pet. Br. at 28-29. Sadler may be correct that, had the district court granted his request for an evidentiary hearing, the district court's decision may have been upheld on appeal—assuming, for the sake of argument, that Sadler was in fact diligent. *See Robinson*, 663 F.3d at 824 (citing *Williams v. Taylor*, 529 U.S. 420, 432 (2000)) ("The strictures of § 2254(e)(2)(A)-(B) do not apply, however, where an applicant has not failed to develop—i.e., has been diligent in developing—the factual basis of his claim in state court."). But the district court instead denied Sadler's request on the authority of *Pinholster*, 131 S. Ct. at 1398, which directs

habeas courts to limit their review "to the record that was before the state court that adjudicated the claim on the merits." Because the state appellate court's action satisfies § 2254(d)'s on-the-merits requirement, the district court's denial of an evidentiary hearing was true to precedent. Therefore, the district court's denial of Sadler's request for a post-sentencing evidentiary hearing was not an abuse of discretion.

**B.**

As noted above, under AEDPA, a habeas court will grant relief from a state-court determination only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1) (2006). Again, review under AEDPA is highly deferential, and habeas courts must give state-court decisions the benefit of the doubt. *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal citations omitted). We thus examine the state appellate court's denial of Sadler's request for a post-conviction evidentiary hearing pursuant to this highly-deferential standard.

The Supreme Court held in *Pennsylvania v. Finley* that "[p]ostconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and is in fact considered to be civil in nature." 481 U.S. 551, 556–57 (1987); *see also Baze v. Parker*, 371 F.3d 310, 317–23 (6th Cir. 2004) (discussing habeas case in which the state court denied petitioner's motion to vacate his sentence on the basis of ineffective assistance of counsel and the district court denied the petitioner's motion for an evidentiary hearing). Arguing otherwise, Sadler relies solely on Justice Breyer's partial concurrence and partial dissent

in *Pinholster* (which no other justice joined).  *See* 131 S. Ct. 1388, 1412 (Breyer, J., concurring in part and dissenting in part).  This does not constitute clearly established federal law within the meaning of AEDPA.  *See* 28 U.S.C. § 2254(d)(1) (2006).  Therefore, the state court's denial of Sadler's request for a post-conviction hearing did not violate clearly established federal law.

## V.

For the reasons discussed above, the district court's denial of habeas relief is affirmed.