NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0500n.06

FILED
Jul 13, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SAMUEL AMBROSE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| KENNETH ROMANOWSKI, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

**O P I N I O N**

BEFORE: ROGERS and McKEAGUE, Circuit Judges; SARGUS, District Judge.[*]

**McKEAGUE, Circuit Judge.** Samuel Ambrose was convicted of second-degree murder in 1979 after an altercation outside of a bar in Detroit. The district court denied his petition for a writ of habeas corpus, and issued a certificate of appealability on two of his twelve claims: (1) the series of jury instructions—an error followed by a retraction and two later clarifications— resulted in an unfair trial in violation of the Due Process Clause; and (2) ineffective assistance of counsel during the plea process in violation of the Sixth Amendment. The state court addressed the jury-instructions claim on direct appeal, and, applying AEDPA deference, that decision was

---

[*]The Honorable Edmund A. Sargus, Jr., Chief Judge of the United States District Court for the Southern District of Ohio, sitting by designation.

not an unreasonable application of clearly established Supreme Court precedent. Ambrose's

ineffective-assistance claim is procedurally defaulted as inexhaustible because his state-court

ineffective-assistance claim is markedly different from his federal-court claim, and he cannot

establish cause and prejudice to excuse the default. But even if we were to construe these two

arguments as the same claim, it fails on the merits. We accordingly affirm.

I.

In April 1979, Ambrose got into a fight with Kenneth Brown outside of a bar in Detroit,

Michigan. Brown died 15 days later from his injuries, and Ambrose was charged with second-

degree murder in the former Recorder's Court for the City of Detroit. He argued self-defense at

trial, but a jury convicted him of second-degree murder and the court sentenced him to life

imprisonment. Ambrose filed many actions in state court before filing for a federal writ of

habeas corpus in 2008. The district court denied all twelve of his claims and ultimately granted a

certificate of appealability on two claims: (1) the jury instructions violated Ambrose's rights

under the Due Process Clause; and (2) Ambrose's trial counsel was ineffective for failing to

inform him of a plea offer. *Ambrose v. Romanowski*, No. 14-1545 (6th Cir. Oct. 27, 2014). The

relevant facts and procedural history for each of the two claims are laid out below.

A.

Ambrose's first claim challenges the trial court's series of jury instructions that began

with an error. At the completion of the proof stage, the court initially instructed the jury in a way

that violated Michigan law: before the jury could consider the lesser-included manslaughter

offense, they had to find him not guilty of the charged offense, second-degree murder. The

prosecutor immediately objected to this instruction, and the court informed the jury that it had

erred. In the next set of instructions, the court emphasized to the jury that it could consider the

charges in any order. The court explained:

> I'm in error on that [instruction]. So, the two possible charges are—or the two charges are Murder in the Second Degree, the lesser included offense of Manslaughter, and you can only have one finding of—you can only find him guilty of one or the other or not guilty, all right, but you cannot find him guilty of both; one or the other or not guilty.

R. 2 at Page ID # 67. Before deliberations began, the trial court explained, "Now then, ladies

and gentlemen, the verdicts that I've given to you will be given to you on a piece of paper. You

discuss them in any order you care to." *Id.*

The jury deliberated for about 30 minutes before being excused for the day. The jury

returned for deliberations the following morning. After about 50 minutes of deliberations, the

court summoned the jury, explaining, "I just wanted to make one point clear that perhaps I didn't

make clear in terms of your verdict. I gave you the two possible—three possible verdicts, and

they are not guilty, guilty as charged, which is Second Degree Murder, guilty of the included

offense of Manslaughter." *Id.* at Page ID # 67–68. The court emphasized, "Now, you can

consider those in any sequence you want." *Id.* at Page ID # 68. The court referred to its original

error once more, acknowledging that it "initially said something [] in terms of the order.

I retracted that" and "wanted to make sure [the jury] understand[s]" that the verdicts can be

considered in any order. *Id.*

About fifteen minutes later, the jury requested reinstruction on the second-degree murder

and manslaughter elements. The Court instructed:

> If the evidence does not convince you beyond a reasonable doubt that the Defendant intended to kill, you must consider whether he acted with an unreasonable disregard for human life. It is sufficient for Murder of the Second Degree if the Defendant consciously created a very high degree of risk of death, and if he had knowledge of the probability of those consequences. However, if

you find that the Defendant's acts did not amount to such a criminal purpose aimed against life, you must find the Defendant not guilty of Murder and consider whether or not he is guilty of Manslaughter.

*Id.* Ambrose appealed his conviction and raised this claim. A two-judge majority in the Michigan Court of Appeals held that the instructions did not taint Ambrose's conviction because the jurors "were neither expressly [n]or impliedly coerced to reach a unanimous agreement of innocence on second-degree murder before they were at liberty to consider the lesser offense of manslaughter." *Id.* The Michigan Supreme Court denied leave to appeal in 1983.

B.

Ambrose's second claim involves an alleged plea offer during the pre-trial process. Ambrose was first represented by Attorney Oliver Nelson. Judge Gardner in the Recorder's Court heard the case during pre-trial proceedings. At some point after the re-pretrial conference, the state provided Ambrose with a new attorney, Richard Nelson (no relation to Oliver Nelson), and the case was reassigned to Judge Roberts. According to Ambrose, Ambrose spoke with his first attorney, Oliver Nelson, about a plea offer "shortly after the preliminary examination." R. 71 at Page ID # 2211. Under the terms of the alleged agreement, Ambrose would plead guilty to manslaughter with a sentence of five-to-fifteen-years' imprisonment. Ambrose testified that at some later time, Oliver Nelson told him that the prosecutor had "finally" agreed to the plea bargain. Ambrose allegedly informed Oliver Nelson he was interested in the plea bargain. He testified that he went to court and appeared before Judge Gardner and that Judge Gardner consented to the agreement and wrote it down. But nothing happened.

After he was assigned to a new attorney, Ambrose claims that he also spoke to his second attorney, Richard Nelson, about that plea offer and that Richard Nelson told him "he would check into it or check something . . . ." R. 65 at Page ID # 1968. Nevertheless, Ambrose claims,

- 4 -

the case proceeded to trial. During trial, when the parties began discussing jury instructions and the lesser-included offense of manslaughter, Ambrose stated that it seemed like Richard Nelson had forgotten to investigate the plea. Ambrose testified that he would have accepted the plea at any point before trial.

Ambrose did not raise the issue on direct review or in state habeas proceedings, but did so pro se via motions for relief from judgment under Michigan Court Rules 6.500, *et seq*. Beginning in 1996, Ambrose unsuccessfully filed three motions for relief from judgment and a motion for a new trial based on his trial counsel's alleged failure *to convey* to him a plea offer. *Ambrose v. Romanowski*, No. 08-CV-12502, 2014 WL 526131, at *7 (E.D. Mich. Feb. 10, 2014). These were rejected under an amendment to Michigan Court Rule 6.502 as a second or successive motion. In 1998, the Michigan Supreme Court informed Ambrose that he could file for relief from judgment under Rule 6.502. In that filing, Ambrose relied solely on a "re-pretrial notice" document. On that document, the initial trial judge, Judge Gardner, had handwritten "Manslaughter" and "5–15." *See* R. 2 at Page ID # 100. Ambrose claimed that this notation showed that the judge was documenting the prosecution's legitimate plea offer and that he would have accepted that offer had he been informed of it.

In 1998, he filed another motion for a new trial on the same grounds. At that point, Ambrose exchanged correspondences with Judge Gardner and provided him a copy of the re-pretrial notice. Judge Gardner responded, informing Ambrose that he did not remember the case, but that "the writing appears to be my writing." *Ambrose*, 2014 WL 526131, at *1. Ambrose successfully filed a motion to supplement the record with this evidence. Ambrose filed another series of motions beginning in 2005. In 2005, Ambrose filed an amended motion for relief again based on ineffective assistance. That motion was denied, and Ambrose filed a motion for

delayed appeal of the denial and a motion to remand based on that same claim. Those motions were denied in 2006. On appeal, the Michigan Court of Appeals denied both "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)" on June 18, 2007. R. 2 at Page ID # 93. The Michigan Supreme Court denied his application for leave to appeal and his motion to remand on the same basis in 2008. The Michigan Supreme Court likewise denied his motion for reconsideration.

Ambrose filed for a federal writ of habeas corpus in 2008, raising twelve claims in the district court. The court initially held that Ambrose's petition was time-barred, but this Court vacated the judgment and held that Ambrose may be able to show the limitations period lapsed "with a colorable showing that equitable tolling should apply given the state trial court's improper refusal to consider his 1996 motion." *Ambrose v. Romanowski*, No. 09-1937 (6th Cir. Feb. 10, 2011). On remand, the state conceded the statute of limitations issue and addressed the claims on the merits. Ambrose then successfully moved for an evidentiary hearing and appointment of counsel with respect to the ineffective-assistance claim. After the hearing, a magistrate judge recommended granting the writ on that claim. But the district court rejected that recommendation and concluded that the Michigan courts had adjudicated the claim on the merits, that the Antiterrorism and Effective Death Penalty Act's (AEDPA) deferential standard of review applied, and that the federal courts were confined on review to the record that was available to the state courts. The district court then denied habeas relief on all twelve claims. It issued a certificate of appealability only on the plea-offer claim. Later, on reconsideration, the district court granted a certificate of appealability on the jury-instructions claim. We are thus left with two claims on appeal.

II.

This Court reviews de novo a district court's denial of a writ of habeas corpus. *Pinchon v. Myers*, 615 F.3d 631, 638 (6th Cir. 2010). Under AEDPA, federal courts must pay deference to the state court depending on the nature of the court's ruling. For claims adjudicated on the merits in state court, federal courts ask whether the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). An "adjudication on the merits" ordinarily produces a "judgment" on the merits such that the state court previously investigated whether a claim had sufficient factual and legal support to establish a violation of federal law and decided that that claim did not. *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007).

AEDPA establishes several procedural hurdles. A federal court may not grant habeas relief unless the petitioner has exhausted the remedies available in state courts or there are no available state corrective processes. 28 U.S.C. § 2254(b)(1); *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). A claim is considered exhausted "when it is clear that a petitioner would be barred from review due to a state procedural bar." *Hanna*, 694 F.3d at 607 (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). Federal court review is also confined by the procedural-default doctrine. A habeas petitioner's claim will be deemed procedurally defaulted and not subject to review if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional

claim; and (4) the petitioner has not shown cause and prejudice excusing the default. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc). A federal court may, however, reach the merits of a procedurally-defaulted claim if the petitioner can establish cause and prejudice or "a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

A.

Ambrose first argues that the trial court's series of instructions regarding the second-degree murder charge and the lesser-included manslaughter offense rendered his trial fundamentally unfair in violation of the Due Process Clause. Because Ambrose raised this issue on direct appeal, AEDPA deference applies on review and we may only grant relief if the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent. Ambrose cannot meet this burden and this claim fails.

In general, the fact that a jury instruction was allegedly incorrect under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000). On habeas review, federal courts ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Estelle*, 502 U.S. at 72. It is not enough that the instruction was "undesirable, erroneous, or even 'universally condemned.'" *Estelle*, 502 U.S. at 72 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In evaluating the impact of the instruction, courts consider the claim in the context of the instructions and the trial record as a whole. *Cupp*, 414 U.S. at 147. The Supreme Court has defined the subcategory of infractions

that constitute constitutional violations very narrowly. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

The Michigan Court of Appeal's 1983 opinion did not involve an unreasonable application of clearly established Supreme Court precedent. In that opinion, on direct review, a two-judge majority concluded that "[v]iewing the [series of instructions] in its entirety, we are convinced that the jurors were neither expressly [n]or impliedly coerced to reach a unanimous agreement of innocence on second-degree murder before they were at liberty to consider the lesser offense of manslaughter." R. 2 at Page ID # 66–69. The majority's reasoning, viewed through the lens of AEDPA deference, was not unreasonable. The trial court admitted the error, informed the jury of the error, and provided a curative instruction. The court again acknowledged the error the following morning. Contrary to Ambrose's assertions, the court's later response to the jurors' question regarding the elements of second-degree murder does not change this analysis. There, the court clarified for the jury the elements of the charged offense. It is true that the jury could have construed that instruction as suggesting a sequence of consideration, but the trial court's *repeated* recognition of its error and its following clarifications were so explicit as to prevent any confusion on this point during deliberation. Ambrose's challenge to the jury instructions accordingly fails.

Ambrose erroneously relies on a dissenting opinion of the Michigan Court of Appeals, suggesting that because this case presents "a close call," the "misleading jury instructions should not be allowed to permanently taint Petitioner's right to a fair trial." Appellant's Br. at 26. The fact that there was a dissenting opinion on direct review or even that the issue may be a close call does not mean the majority's analysis was unreasonable. The dissenting opinion cited "'[t]he general rule in Michigan'" that "'where both erroneous and proper instructions have been given

to the jury, the jury is presumed to have followed the erroneous instruction.'" R. 2, Order, Page ID # 72 (quoting *People v. White*, 282 N.W.2d 200, 201 (Mich. Ct. App. 1979)). But violations of Michigan law are not grounds for habeas relief. Our review is limited by AEDPA, which confines the analysis to Supreme Court precedent. AEDPA "creates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc) (citations and internal quotation marks omitted). The state court majority's reasoning did not involve an unreasonable application of clearly established Supreme Court precedent.

B.

Ambrose next argues that his trial attorneys rendered ineffective assistance of counsel by failing to communicate Ambrose's acceptance of an alleged plea offer. Ambrose has brought this ineffective-assistance claim at various points in both state and federal courts, but in significantly different words: Ambrose presented this claim in state court as ineffective assistance due to his trial attorneys' failure to convey to him the existence of a valid plea offer. Not until after the federal evidentiary hearing did Ambrose present the claim as ineffective assistance due to his trial attorneys' failure to communicate his *acceptance* of that plea offer. Because these arguments are significantly different, the ineffective-assistance claim is procedurally defaulted as inexhaustible.

In order to exhaust, a petitioner must present the claim to every level of the state courts in one full round. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). "[E]xhaustion requires that the same claim under the same theory be presented to state courts before raising it in a habeas petition." *Pillette*, 824 F.2d at 497 (citing *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987)); *see also Wagner v. Smith*, 581 F.3d 410,

414–15 (6th Cir. 2009). Only "where the petitioner presented both the factual and legal basis for his claim to the state courts" is a claim fairly presented for exhaustion purposes. *Hanna*, 694 F.3d at 606 (citations omitted); *see also Williams v. Taylor*, 529 U.S. 420, 437 (2000). The familiar *Strickland* standard applies when we review the merits of ineffective-assistance claims. Under that standard, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In addition, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Ambrose raised an ineffective-assistance claim in state court, but it was not the same claim he is raising here. In state court, Ambrose repeatedly presented the claim as his counsel's failure *to notify him* of the plea offer. R. 14-3 at Page ID # 314, 324 ("Had counsel disclosed the plea offer, Petitioner would have accepted the plea offer.") On November 30, 1998, in his brief in support of his motion for relief from judgment, Ambrose wrote that his attorney, Oliver Nelson, "did not notify Defendant by certified mail or otherwise of the plea offer" and "[n]either did trial attorney Richard Nelson." R. 63-10 at Page ID # 1706. "If Defendant would have known that the plea offer existed, Defendant would have accepted the plea offer." *Id.* at Page ID # 1706–07. In his 1999 letter to Judge Gardner, Ambrose wrote: "The Wayne County Prosecutor's office made the plea offer, but my attorney did not convey the plea offer to me in a timely fashion. This information was withheld from me until after the trial." R. 63-12 at Page ID # 1861. Again, in his 2005 appeals, he argued that his counsel failed to notify him of the judge's approval of the plea offer. *See* R. 63-12 at Page ID # 1803–1805; R. 14-4 at Page ID # 375.

After the federal evidentiary hearing, Ambrose argued that he "unequivocally" "communicated his desire to accept the manslaughter offer, both to Oliver Nelson and Richard Nelson" and "[i]t appears that Oliver Nelson did not pass on this bit of information to Richard Nelson when Richard took over the case." R. 67 at Page ID # 2126. Despite this shift in wording, the district court continued to classify his argument as one premised on his attorneys' failure to convey to Ambrose the existence of a plea offer.

Ambrose's two separate ineffective-assistance of counsel claims do not satisfy the requirement that petitioners "fairly present" the claim in state court. While the two claims— failure to convey a plea offer to Ambrose and failure to communicate Ambrose's acceptance of that plea offer—both require proof of an actual plea offer, they are markedly different. The former claim asserts that Ambrose did not even know of the existence of a plea offer during pre-trial proceedings. The latter, on the other hand, asserts that not only did Ambrose know, but that he actually informed his counsel that he accepted the plea offer. Our precedent requires petitioners to state with exact specificity the factual nature of their claim. *See Hanna*, 694 F.3d at 609 ("Whether or not Petitioner's efforts to exhaust were sufficient, his current claim is easily distinguishable because the factual basis supporting his arguments has changed dramatically."). Ambrose's claims suggest conflicting arguments and rest on a different set of facts. This is significant "because of the important federal-state comity concerns served by the exhaustion doctrine." *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). We have recognized that is not enough that the different claims rest on similar facts, that the claims were "somewhat similar," or that the arguments were "self-evident." *Id.* (citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). Accordingly, it is clear that the state courts were not fairly presented with the argument Ambrose makes before this Court.

Because Ambrose failed to properly exhaust his current argument in state court, and he no longer has a state-court remedy available since he has already filed a motion for relief from judgment under Mich. Ct. R. 6.502(G)(1), his claim is procedurally defaulted. *See Jalowiec*, 657 F.3d at 304; *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding that failure to timely exhaust habeas claim amounts to procedural default).

Ambrose may overcome procedural default by showing cause and prejudice for the default. He "may also obtain review of his claim if review would prevent a fundamental miscarriage of justice," for example by "submit[ting] new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Jones v. Bagley*, 696 F.3d 475, 484 (6th Cir. 2012). Ambrose cannot excuse the default under either route. To demonstrate cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Carrier*, 477 U.S. at 488. Ambrose has not argued cause and prejudice and we find no evidence to suggest that any external factor impeded him from pleading his ineffective-assistance claim, as phrased in federal court, in state court. Ambrose's pro se status during the state post-conviction proceedings does not change this analysis. Because Ambrose has not established cause to excuse the default, we need not consider prejudice.

This claim was not only procedurally defaulted, it also in any event fails on the merits. Construing Ambrose's state and federal court arguments extremely liberally as broader ineffective-assistance claims with respect to the entire pre-trial representation, the state court adjudicated the claim on the merits such that AEDPA deference applies, and Ambrose cannot overcome that hurdle. The Supreme Court has narrowed our consideration of habeas claims, instructing courts that "[i]f a claim has been adjudicated on the merits by a state court, a federal

habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Rather, federal habeas courts must presume that "the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" or any "reason to think some other explanation for the state court's decision is more likely." *Id.* at 99–100; *Sadler v. Howes*, 541 F. App'x 682, 688–89 (6th Cir. 2013). A state-court adjudication, even without an explanation, thus is "presumed to be on the merits." *Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013).

The state courts' most recent orders citing Michigan Court Rule 6.508(D) are ambiguous, so we look to the "last reasoned state court opinion to determine the basis for the state court's rejection of [the] claim." *Guilmette*, 624 F.3d at 291. We accordingly consider the state court's January 26, 2006 order denying Ambrose's amended motion for relief from judgment. The summary order states that after the court reviewed the relevant pleadings and records, the motion for judgment was "denied." R. 2, Order, Page ID # 92. There is no indication that the trial court relied on a procedural rule here, *see McClellan v. Rapelje*, 703 F.3d 344, 348 (6th Cir. 2013), or anything other than the merits of Ambrose's ineffective-assistance claim. And without evidence that the court relied on some other ground, Ambrose cannot overcome *Richter*'s presumption. We therefore construe the denial of his motion for relief from judgment, without reference to a state procedural rule, to be a denial on the merits of the ineffective-assistance claim.

Applying AEDPA deference and confining our review to the state court record as we are required to do, *see Pinholster*, 131 S. Ct. at 1400, Ambrose's claim fails. The district court

correctly determined that the trial court's denial of Ambrose's motion for relief from judgment was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Generally, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). In order to show defective performance such that ineffective assistance led to the offer's rejection or lapse, Ambrose must start by showing that there was an actual plea offer from the prosecutor. On the record presented to the state court, Ambrose simply cannot show that there was a formal plea offer made by the prosecutor, especially under the deferential standard of review.

The sole piece of evidence that Ambrose relied on in state court is a "re-pretrial" form with the pre-trial judge's notations "Manslaughter 5–15." Ambrose's argument requires a lot of conjecture, which is not appropriate on habeas review. "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court . . . 'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013) (quoting *Richter*, 562 U.S. at 102). These notations might document the judge's thought processes during the proceedings. Or, as the state points out, they could represent an offer made by the defense counsel. There is simply no evidence that these notations represent anything beyond what they are: simple notations. If Ambrose's attorneys were never presented with a valid offer, his trial attorneys could not have failed to convey to Ambrose a legitimate plea offer nor could they have failed to convey Ambrose's acceptance of that plea offer.

III.

For these reasons, we affirm.